975 A.2d 555

**Mallissa L. WEAVER and Chris A. Weaver**

v.

**Walter W. HARPSTER and John K. Shipman, individually and t/d/b/a Harpster and Shipman Financial Services, and Susquehanna Insurance Associates, Inc.**

**Appeal of Walter W. Harpster, individually and t/d/b/a Harpster and Shipman Financial Services and Susquehanna Insurance Associates, Inc.**

Supreme Court of Pennsylvania.

Submitted March 4, 2008.

Decided July 20, 2009.

490

Michael John Zicolello, Esq., Schemery Zicolello, P.C., Williamsport, for Harpster, Walter W.

David F. Dieteman, Esq., John A. Onorato, Esq., Erie, for amicus curiae Manufacturers' Association of Northwest Pennsylvania.

John Paul Friedmann, Esq., for Pacific Legal Foundation.

Todd Peter Kerstetter, Esq., Schlesinger & Kerstetter, L.L.P., Shamokin, for Shipman, John K.

Roger Vaughn Wiest II, Esq., Sunbury, for Weaver, Mallissa L. and Chris A.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice BAER.

Under the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951–963, employers with four or more employees are prohibited from discriminating against their employees on the basis of sex. *See* 43 P.S. §§ 954 (defining employer), 955 (listing "unlawful discriminatory practices"). At common law, an employer may terminate an at-will employee for any reason unless that reason violates a clear mandate of public policy emanating from either the Pennsylvania Constitution or statutory pronouncements.[1] In this case, we address the intersection of the PHRA and the public policy exception to at-will employment, namely, whether an employer with fewer than four employees, although not subject to the PHRA's prohibition against sexual discrimination, nevertheless is prohibited from discriminating against an employee on the basis of sex. Because the PHRA reflects the unambiguous policy determination by the legislature that employers with fewer than four employees will not be liable for sex discrimination in Pennsylvania, we are constrained to conclude that a common law claim for wrongful discharge, resulting from sex discrimination, will not lie against those employers. We therefore reverse the Superior Court.

In August of 2001, John K. Shipman and Appellant Walter W. Harpster (Employer)[2] hired Appellee Mallissa Weaver (Employee) as an at-will employee to be the administrative assistant and office manager at their small financial planning office.[3] At all relevant times, Employer employed less than

1.  For ease of discussion, we refer to the constitutionally and/or statutorily anchored Pennsylvania policies solely as "public policy."

2.  Mr. Shipman and Mr. Harpster together operated the businesses of Harpster & Shipman Financial and Susquehanna Insurance Associates. Appellant/Employer is Mr. Harpster, individually and t/b/d/a Harper & Shipman Financial and Susquehanna Insurance Associates.

3.  As will be discussed *infra*, the at-will employment doctrine provides that absent a statutory or contractual provision to the contrary, the employer and employee each have the power to terminate the employment relationship for any or no reason. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174, 176 (1974). Exceptions to this general rule have been recognized in only the most limited circum-

four employees. During the year of her employment, Employee alleges that she was subjected to continued sexual harassment by Employer. According to her complaint, Employer invited Employee to engage in a sexual relationship and committed various inappropriate sexual and physical contacts, such as rubbing, touching and hugging her, making inappropriate comments about her appearance, attire, and sexual proclivities, and closely following her around the office and to the bathroom. Employer also offered Employee money to go to bed with him and requested her company on a trip "for entertainment purposes." Amended Complaint, 1/20/2004 at 4. Employee repeatedly rejected these unwelcomed advances, and demanded that the behavior cease. Upon being rejected, Employer made Employee's working conditions intolerable. *Id.* at 5. Due to the unbearable working conditions created by Employer, Employee resigned on June 24, 2002.[4]

The PHRA recognizes as a "civil right" the opportunity "for an individual to obtain employment for which he is qualified," without discrimination on the basis of sex. *See* 43 P.S. § 953. This right is enforceable pursuant to the PHRA, *id.*, which empowers the Pennsylvania Human Relations Commission (PHRC) to accept and investigate complaints of sex discrimination by employers of four or more employees. *See* 43 P.S.

stances, where discharges of at-will employees would threaten clear mandates of public policy. *See id., 319 A.2d at 180 (holding that an employee has no right of action against an employer for wrongful discharge where no clear mandate of public policy is violated thereby).*

4. Although one basis of this Court's grant of allowance of appeal was to determine whether sexual harassment constitutes sex discrimination under Pennsylvania law, Employer has not addressed this issue in his brief, and therefore has waived any argument on this point. Pa.R.A.P. 2119(a). Therefore, for purposes of this opinion, we assume that sexual harassment constitutes a form of sex discrimination under Pennsylvania law, consistent with the Pennsylvania Human Relation Commission's guidelines. *See* PHRC Sexual Harassment Guidelines, 11 Pa. Bull. 522 (Jan. 31, 1981) ("Harassment on the basis of sex is a violation of the [PHRA]"). *See also Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that under federal law, "without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex.").

§ 954(b).[5]

Following the PHRC's rejection of her claim, Employee alleged that she had exhausted her administrative remedies through the PHRC, and filed an action in the court of common pleas alleging the following eight counts of wrongdoing against Employer: (1) *quid pro quo* sexual harassment; (2) hostile work environment sexual harassment; (3) discrimination and harassment in violation of the PHRA, *see* 43 P.S. § 955; (4) constructive discharge in violation of the PHRA, *see id.*; (5) wrongful discharge; (6) assault and battery; (7) invasion of privacy; and (8) loss of consortium.[6] Employer filed preliminary objections, averring that Employee could not plead causes of action based upon alleged violations of the PHRA because Employer was not an employer as defined by the PHRA, and, further, that sex discrimination claims are not legally cognizable at common law because the PHRA is the exclusive remedy for employment related discrimination. The trial court agreed, finding on June 28, 2004 that Employee's complaint could not proceed because Employer had fewer than four employees and therefore did not qualify as an "employer" under the PHRA, and further finding that Pennsylvania does not recognize a common law cause of action sounding in sex discrimination, sexual harassment, or termination of at-will employment based upon sex discrimination, outside of the PHRA. Consequently, the trial court dismissed the first five counts and permitted the case to proceed on the remaining counts, sounding in assault and battery, invasion of privacy, and loss of consortium.[7]

5. Specifically, employer is defined, in relevant part, as follows:
   The term "employer" with respect to discriminatory practices based on race, color, age, sex, national origin or non-job related handicap or disability, includes religious, fraternal, charitable and sectarian corporations and associations employing four or more persons within the Commonwealth.
   43 P.S. § 954(b).

6. Employee's husband, Chris Weaver, sought damages on the claim of loss of consortium.

7. Pre-trial, the trial court granted Mr. Shipman's motion for summary judgment, dismissing him from the case, and Mr. Harpster's motion for summary judgment with respect to the invasion of privacy claim. At

494

Following a jury trial for assault and battery and loss of consortium, the jury returned a verdict in favor of Employer. Employee appealed to the Superior Court, requesting reversal of two counts of her amended complaint that the trial court dismissed pre-trial in its June 28, 2004 order: discrimination and harassment in violation of the PHRA (Count 3), and constructive discharge in violation of the PHRA (Count 4). Employee urged the Superior Court to find a public policy exception to the at-will employment doctrine, arguing that it would be arbitrary and against public policy to foreclose all avenues of relief for victims of sexual harassment by employers of less than four employees. The Superior Court agreed with Employee, finding that although aggrieved parties must first exhaust their administrative remedies with the PHRC, *see Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989), they are not deprived of ultimately resorting to the courts. *Weaver v. Harpster*, 885 A.2d 1073, 1075 (Pa.Super.2005) (citing 43 P.S. § 962(c), which provides that if the PHRC dismisses a complaint, the complainant "shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this Act"). The court recognized that there is no common law cause of action against an employer for termination of an at-will employee, *see Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), except where the termination would subvert a well-established public policy, *see Highhouse v. Avery Transp.*, 443 Pa.Super. 120, 660 A.2d 1374 (1995).

The Superior Court agreed with Employee that there is, in fact, a clear public policy against sex discrimination and/or sexual harassment in the workplace without regard to the size of the employer. The court found an expression of this public policy in the PHRA's declaration of the right to be free from

the conclusion of Employee's case, the court granted a compulsory nonsuit as to Susquehanna Insurance Associates and Harpster and Shipman Financial Services, dismissing them from the case. Consequently, the only remaining defendant was Appellant Mr. Harpster, and the remaining claims were assault and battery and loss of consortium.

discrimination in the workplace based on sex. 43 P.S. § 953.[8] The court found further support for this clear public policy against sex discrimination and sexual harassment in the Pennsylvania Equal Rights Amendment (Equal Rights Amendment), Article I, Section 28 of the Pennsylvania Constitution, which provides: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." PA. CONST. art. 1, § 28.

The Superior Court found that because sex discrimination is prohibited under the PHRA and the Equal Rights Amendment, it constitutes "a legal injury whose recompense is mandated by the remedies clause, Article I, Section 11, of the Pennsylvania Constitution." *Weaver*, 885 A.2d at 1077. This section provides:

> All courts shall be open; and every man for an injury done him in his lands, goods person or reputation shall have remedy by due course of law; and right and justice administered without sale, denial or delay.

PA. CONST. art. I, § 11. Considering the remedies clause, the Superior Court reasoned that the legislature would not have defined certain acts as illegal via both the Constitution and the PHRA, thus establishing a public policy unequivocally condemning such conduct, and then remove all judicial recourse for the victims of that conduct. *Weaver*, 885 A.2d at 1077. Upon agreeing with Employee that sex discrimination is prohibited under the PHRA and the Equal Rights Amendment, the Superior Court determined that "to prevent an employee who is alleging sexual harassment from pursuing her claim in court only because her employer has less than four employees

---

8. This section provides:

> The opportunity for an individual to obtain employment for which he is qualified, and to obtain all the accommodations, advantages, facilities and privileges of any public accommodation and of any housing accommodation and commercial property without discrimination because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, national origin, the use of a guide or support animal because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act.

appears a direct contravention of a clear public policy...."
*Weaver*, 885 A.2d at 1077. According to the Superior Court,
this clear public policy provides an exception to the at-will
employment doctrine. Thus, the Superior Court vacated the
order of the trial court that granted Employer's preliminary
objections to the counts for discrimination and harassment in
violation of the PHRA and constructive discharge in violation
of the PHRA.

We granted allowance of appeal to determine whether
Pennsylvania recognizes a common law cause of action for
discriminatory termination of at-will employment in cases
where the employee is precluded from pursuing a remedy
under the PHRA.[9] Our standard of review over questions of
law is *de novo* and our scope of review is plenary, as this
Court may review the entire record in making its decision.
*Kripp v. Kripp*, 578 Pa. 82, 849 A.2d 1159, 1164 n. 5 (2004);
*Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659, 664 n. 4
(2002).

Although Employer emphasizes an employer's right to ter-
minate an at-will employee for any reason, he recognizes that
there can be a common law cause of action for wrongful
discharge of an at-will employee where the employer's conduct
in terminating the employment violates a clear mandate of
public policy. *See Clay*, 522 Pa. 86, 559 A.2d 917 (1989).
Employer argues that this exception is extremely narrow, and
that in most instances, courts have refused to find violations of
public policy when an employee challenges the termination of
employment. *See, i.e., Tourville v. Inter–Ocean Ins. Co.*, 353
Pa.Super. 53, 508 A.2d 1263 (1986) (finding no public policy
violation where an employee was discharged for being unable
to work because of a hospitalization); *Martin v. Capital Cities
Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986) (finding no
public policy violation where employee discharge was result of
employee placing an advertisement in a competing newspa-

9. As noted, we also granted allowance of appeal to determine whether
   Employee's allegations of sexual harassment constitute sex discrimina-
   tion, but Employer has waived consideration of this issue by failing to
   address it in his brief.

per); *Gillespie v. St. Joseph's Univ.*, 355 Pa.Super. 362, 513 A.2d 471 (1986) (finding no public policy violation where employee was discharged following an unsubstantiated accusation of criminal behavior).

Citing *Clay*, Employer asserts that it is "well settled" that a plaintiff may not bring a common law claim for employment discrimination where the claim cannot be brought under the PHRA. Nor can she bring an independent common law cause of action outside of the PHRA for wrongful termination based upon employment discrimination, because there is no public policy exception to the at-will employment doctrine for sex discrimination by an employer of less than four employees.

In reaching this conclusion, Employer disputes both sources of public policy relied upon by the Superior Court and argues that neither the PHRA nor the Equal Rights Amendment can properly be relied upon as a source of public policy against Employee's termination. First, regarding the PHRA, Employer argues that it is clearly inapplicable because it exempts small employers of less than four employees, thus demonstrating a public policy to protect small employers from defending against claims based on sex discrimination. To find in the PHRA a public policy that reaches small employers when the language of the PHRA itself is explicitly limited to employers of four or more employees would, according to Employer, require this Court to usurp the role of the legislature and extend protections to employees that the legislature chose not to protect in the PHRA.

Employer asserts that the courts have never utilized a wrongful termination statute such as the PHRA to recognize a public policy exception to the at-will employment doctrine beyond the protections afforded by that statute. *See Holewinski v. Children's Hosp. of Pittsburgh*, 437 Pa.Super. 174, 649 A.2d 712 (1994). In *Holewinski*, the plaintiff asserted that she was wrongfully discharged because she had acted as a whistleblower. The Superior Court acknowledged that although the Commonwealth has a Whistleblower Law, it only applied to employees discharged from government entities. As the defendant in *Holewinski* was not a government entity, the

plaintiff was not protected by the Whistleblower Law. Therefore, the Superior Court declined to find a public policy exception in the plaintiff's case premised on the need to protect whistleblowers. *Holewinski*, 649 A.2d at 715. Similarly, Employer urges this Court to decline to find a public policy exception to at-will employment for employees who are sexually harassed by small employers premised upon a statute that exempts small employers. Second, regarding the Equal Rights Amendment as the source of public policy, Employer argues that by its terms, the Amendment affords "equality of rights *under the law*" (emphasis added by Employer). Affording equal rights under the law circumscribes the conduct of state and local governmental entities and officials in their formulation, interpretation, and enforcement of statutes and regulations. *See Hartford Accident & Indem. v. Ins. Comm'r*, 505 Pa. 571, 482 A.2d 542 (1984). Here, Employer argues that Employee cannot point to any law under which she does not possess equal rights.

Because Employer does not believe that a clear public policy was violated here, it does not address the Superior Court's reasoning with regard to the Remedies Clause. Employer, however, argues that Employee herein is not without remedies for her injury. Specifically, Employer argues that Employee had the opportunity to obtain remedies premised on the torts of assault, battery, and invasion of privacy. *See DeAngelo v. Fortney*, 357 Pa.Super. 127, 515 A.2d 594, 596 (1986) ("an action for invasion of privacy will ordinarily be an adequate remedy for highly offensive conduct which unreasonably interferes with another's right to be left alone.").

In response, Employee argues that she is entitled to bring a common law cause of action for the termination of at-will employment because her termination implicates a clear mandate of public policy articulated in the PHRA and the Equal Rights Amendment. *See Davenport v. Reed*, 785 A.2d 1058, 1063 (Pa.Cmwlth.2001) ("to justify the application of the public policy exception, the employee must point to a clear public policy articulated in the constitution, statutes, regulations, or judicial decisions directly applicable to the facts in the case.").

Although she acknowledges that we have never held that there is a common law cause of action for termination of an at-will employee due to sex discrimination, Employee urges this Court to chart new territory and find that her termination implicates a clear mandate of public policy such that it is an exception to the at-will employment doctrine.

The source of this public policy, according to Employee, is, first, the PHRA, which she asserts embodies a public policy bestowing a right to be free from discrimination based on sex in the workplace. *See Clay*, 559 A.2d at 919. *See also* 43 P.S. § 952 ("It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their ... sex...."). She asserts that the public policy established by the PHRA applies to all employers, while the administrative procedures for resolving claims of unlawful discrimination apply only to victims of discrimination by employers of four or more employees. Second, she points to the Equal Rights Amendment, which she contends provides a clear statement of public policy against sex discrimination in the workplace. Employee urges that no clearer statement of public policy exists than that of a constitutional amendment, and argues that the Equal Rights Amendment should persuade this Court to expand the common law to encompass a cause of action for wrongful discharge arising out of sex discrimination. *See Clay*, 559 A.2d at 924 (Zappala, J. concurring) ("I, for one, would be loathe to intimate ... that this Court would not acknowledge that the Commonwealth has recognized a public policy favoring the equal treatment of employees without regard to sex. No more clear statement of public policy exists than that of a constitutional amendment. The passage of the Pennsylvania Equal Rights Amendment, Article I, § 28 is the expression of public policy.").

If Employee is not permitted to pursue a common law cause of action in this case, she asserts that employees of small employers will be left without a remedy for sex discrimination in the workplace, which would be contrary to the Remedies Clause of the Pennsylvania Constitution. *See* PA. CONST. art.

1, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."). She urges this Court not to find that the legislature's decision to regulate only employers with four or more employees granted permission to smaller employers to commit acts of sex discrimination in the workplace without fear of liability.

We begin by reviewing the principles of the at-will employment doctrine and the public policy exception to it. We will then examine the PHRA and the Equal Rights Amendment respectively to determine whether they establish a public policy exception to the at-will employment doctrine specifically for termination of employment resulting from sex discrimination in the workplace, without regard to the size of the employer.

■ In Pennsylvania, absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason. *Geary*, 456 Pa. 171, 319 A.2d 174. *See also McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283 (2000) (noting that Pennsylvania courts have recognized for over a century that an employer may terminate an employee for any reason absent a contractual provision to the contrary); *Henry v. Pittsburgh & L.E.R. Co.*, 139 Pa. 289, 21 A. 157 (1891). In *Geary*, which involved a discharge based on an employee's report to his superiors concerning the unsafe nature of the steel pipe being manufactured and sold by his company, the Court concluded that although the employee did not set forth a cause of action for wrongful termination, the Court might find, in another case, a public policy exception to the doctrine of employment at-will. *Geary*, 319 A.2d at 180. The Court cautioned that the legislature is the most appropriate branch of government to create exceptions to the at-will employment rule. *Id.* ("we are not persuaded that creating a new non-statutory cause of action of the sort proposed by appellant is the best way to achieve" the result of encouraging employees to express their views on the quality of the employer's prod-

ucts). Moreover, this Court concluded that disturbing the at-will presumption would unwisely interfere with "the legitimate interest of employers in hiring and retaining the best personnel available. The ever present threat of suit might well inhibit the making of critical judgments by employers concerning employee qualifications." *Geary*, 319 A.2d at 179.

Subsequently, in *Clay*, 522 Pa. 86, 559 A.2d 917, we expanded on our decision in *Geary*. In *Clay*, an employee brought a common law cause of action seeking damages for wrongful discharge without first filing a complaint with the PHRC. We first noted that as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Clay*, 559 A.2d at 918. *See also Householder v. Kensington Mfg. Co.*, 360 Pa.Super. 290, 520 A.2d 461 (1987). Second, we noted that there are exceptions to this general rule in "only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Clay*, 559 A.2d at 918. The following year we addressed a doctor's claim that his hospital-employer was estopped from discharging him. *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990). We reaffirmed the rule that there is no common law cause of action against an employer for termination of an at-will employment relationship and recognized that exceptions to this rule "have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Id.* at 348. *See also McLaughlin*, 750 A.2d at 287. We declined to find that a cause of action for wrongful discharge had been stated in either *Clay* or *Paul*, although we recognized that such a claim could be brought in Pennsylvania under very narrow circumstances.

Several years later, we recognized such narrow circumstances in *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998), where, although we continued to recognize that the exception to at-will employment is narrow, we determined that an employer who fires an employee in retaliation for bringing a workers' compensation claim violates the public policy of this Commonwealth and can be liable at common law for wrongful discharge. Subsequently, in *Rothrock v. Rothrock Motor*

*Sales, Inc.,* 584 Pa. 297, 883 A.2d 511 (2005), we found that the same public policy prohibited the termination of an employee for declining to compel a subordinate employee not to seek workers' compensation.

These cases demonstrate that the strong presumption of all non-contractual employment relations is at-will. An employee may bring a cause of action for a termination of that relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy. In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted. *Mamlin v. Genoe (City of Philadelphia Police Beneficiary Ass'n),* 340 Pa. 320, 17 A.2d 407, 409 (1941). Rather, it is for the legislature to formulate the public policies of the Commonwealth. The right of a court to declare what is or is not in accord with public policy exists "only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Mamlin,* 17 A.2d at 409. Only in the clearest of cases may a court make public policy the basis of its decision. *Id.* To determine the public policy of the Commonwealth, we examine the precedent within Pennsylvania, looking to our own Constitution, court decisions, and statutes promulgated by our legislature. *McLaughlin,* 750 A.2d at 288; *Hall v. Amica Mutual Ins. Co.,* 538 Pa. 337, 648 A.2d 755 (1994); *Lurie v. Republican Alliance,* 412 Pa. 61, 192 A.2d 367 (1963); *Mamlin,* 340 Pa. 320, 17 A.2d 407.

Following *Geary,* public policy exceptions to at-will employment have been recognized where the wrongful discharge claims have involved infringements on statutory and constitutional rights. These cases demonstrate Pennsylvania's traditional view that exceptions to at-will employment should be few and carefully sculpted so as not to erode an employer's inherent right to operate its business as it chooses. *Rothrock, supra; Shick, supra; Hunter v. Port Auth. of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980) (recognizing a public policy against unnecessarily stigmatizing former offenders, finding that a public employer could not deny a former

offender employment on the basis of a prior conviction for which the offender had been pardoned, unless the conviction was reasonably related to fitness to perform the job sought); *Highhouse,* 443 Pa.Super. 120, 660 A.2d 1374 (concluding that an employee was wrongfully discharged for filing an unemployment compensation claim); *Raykovitz v. K Mart Corp.,* 445 Pa.Super. 378, 665 A.2d 833 (1995) (same); *Kroen v. Bedway Sec. Agency,* 430 Pa.Super. 83, 633 A.2d 628 (1993) (holding that an employee was wrongfully discharged for refusing to submit to a polygraph test); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (concluding that employee cannot be discharged for serving on a jury). *See also Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 898 (3d Cir.1983) (holding that public policy was violated where the employee was discharged for refusal to participate in a lobbying effort); *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3rd Cir.1979) (applying Pennsylvania law and finding a public policy violation for firing a worker for refusing to submit to a polygraph test, when a statute forbid such testing).

Where the termination has not implicated a clear mandate of public policy, this Court and the Superior Court have not permitted a common law cause of action for wrongful discharge. *See McLaughlin,* 561 Pa. 307, 750 A.2d 283 (finding that an at-will employee did not state a claim for wrongful discharge under the public policy exception to the at-will employment doctrine based solely upon alleged retaliatory termination of her employment in violation of the Occupational Safety and Health Act); *Tourville,* 353 Pa.Super. 53, 508 A.2d 1263 (holding that the discharge of an employee hospitalized for illness did not violate public policy); *Martin,* 354 Pa.Super. 199, 511 A.2d 830 (finding no cause of action where an employee was discharged in retaliation for placing an advertisement with a competing paper); *Gillespie,* 355 Pa.Super. 362, 513 A.2d 471 (holding that an employee may be discharged as a result of an accusation of criminal behavior); *McCartney v. Meadowview Manor, Inc.,* 353 Pa.Super. 34, 508 A.2d 1254 (1986) (finding no cause of action where an employee of a nursing home was discharged because she applied to

the state for a license to run a competing facility); *Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 489 A.2d 828 (1985) (holding that there was no violation of a clear mandate of public policy where an employee was discharged for attempting to curtail the misuse of public tax revenues); *Cisco v. United Parcel Services, Inc.,* 328 Pa.Super. 300, 476 A.2d 1340 (1984) (finding no cause of action where an employee was discharged after being wrongly accused and subsequently acquitted of criminal conduct in connection with his employment).

A brief review of the PHRA is necessary to analyze Employee's attempt to demonstrate a cause of action based on the termination of an at-will employee. In the findings and declarations of policy of the PHRA, the legislature specifically announced a broad policy declaration against discrimination applicable to "all individuals:"

(a) The practice or policy of discrimination against individuals or groups by reason of their . . . sex . . . is a matter of concern of the Commonwealth. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state. The denial of equal employment . . . opportunities because of such discrimination, and the consequent failure to utilize the productive capacities of individuals to their fullest extent, deprives large segments of the population of the Commonwealth of earnings necessary to maintain decent standards of living, necessitates their resort to public relief and intensifies group conflicts, thereby resulting in grave injury to the public health and welfare. . . .

(b) It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their . . . sex . . . , and to safeguard their right to obtain and hold employment without such discrimination. . . .

43 P.S. 952(a), (b).

In accord with this public policy, the legislature established that "[t]he opportunity for an individual to obtain employment

for which he is qualified" without sex discrimination is "a civil right which shall be enforceable as set forth in this act." 43 P.S. § 953. Thus, in the first section of the PHRA, the legislature articulated a public policy in the broadest of terms, establishing that the Commonwealth's interest in fostering employment without regard to sex applies to "all individuals," without limitation. 43 P.S. § 952(b). In the next section, however, the legislature expressed that the right to freedom from discrimination in the workplace is a civil right "which shall be enforceable as set forth in this act." 43 P.S. § 953. Therefore, despite the broad policy articulation of Section 952, the right established therein is only enforceable pursuant to the terms of the PHRA: the PHRA establishes both a right to be free from sex discrimination in the workplace and provides the administrative procedures by which those rights shall be vindicated. 43 P.S. § 953; *Clay,* 559 A.2d at 919. The use of the word 'shall' indicates that the legislature intended to make the administrative procedures of the act the mandatory procedure by which to vindicate the rights created therein. *Clay,* 559 A.2d at 919; *Householder,* 520 A.2d at 463, n. 1.

The PHRA defines "employer" as including "religious, fraternal, charitable, and sectarian corporations and associations employing four or more persons within the Commonwealth." 43 P.S. § 954(b). Specific "unlawful discriminatory practices" are described in Section 955, which makes it an unlawful discriminatory practice "[f]or any employer" to discharge from employment or otherwise discriminate against an employee on the basis of sex. 43 P.S. § 955(a). Thus, despite announcing a broad public policy that encompasses "all individuals" in Section 952, the legislature chose to characterize as an "unlawful discriminatory practice" only discrimination by "any employer," expressly defined to exclude employers of fewer than four employees, thereby limiting the reach of the act.

Further, the PHRA vests the PHRC with authority to investigate allegations of unlawful discrimination and, if probable cause exists to credit the allegations, to endeavor to eliminate the asserted unlawful discrimination. 43 P.S. § 959. The legislature made the PHRC the exclusive authority to

remedy, *inter alia,* unlawful sex discrimination because it recognized that "only an administrative agency with broad remedial powers, exercising particular experties [sic], could cope effectively with the pervasive problem of unlawful discrimination." *PHRC v. Alto–Reste Park Cemetery Ass'n,* 453 Pa. 124, 306 A.2d 881, 887 (1973). Entrusting authority to resolve claims of employment discrimination to the PHRC, rather than the courts, is the expression of a legislative decision to keep such claims out of the courts of common pleas, until the complainant exhausts her administrative remedies, and to concentrate the expertise of resolving such claims in an administrative agency. *See Clay,* 559 A.2d at 919; *Alto–Reste Park Cemetery Ass'n,* 306 A.2d at 887. A complainant's right to resort to the courts for redress for unlawful discrimination is not foreclosed:

> (c) (1) In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.

43 P.S. 962(c). A complainant, therefore, has the ultimate right to resort to the courts "based on the right to freedom from discrimination granted by this act" within one year from when the PHRC dismisses the complaint or fails to enter into a conciliation agreement to which the complainant is a party.

There is no question that because "employer" is defined to exclude Employer, his discrimination of Employee was not an unlawful discriminatory practice as defined by the PHRA. Employee's argument is that, although the PHRA does not directly regulate Employer's behavior in relation to his few employees, it does so indirectly by announcing a general

public policy to protect all employees, regardless of whom they work for, from sex discrimination in the workplace. She argues that the policy declaration of Section 952 can be separated from the rest of the act and that it demonstrates a public policy against such discrimination that applies equally to everyone. Essentially, she argues that victims of discrimination by employers of four or more employees are bound by the procedures of the PHRA, while she, and other employees of small employers, may resort to the courts by relying on the public policy found in Section 952. We must therefore determine whether the expression of policy contained in Section 952, independent of the rest of the PHRA, creates a common law cause of action for wrongful termination that is generally applicable to all employees of the Commonwealth.

*Clay* is instructive in analyzing this question. In *Clay*, the plaintiff alleged that her at-will employment had been wrongfully terminated by her employer because she had rebuffed the advances of one of defendant corporation's management level employees. 559 A.2d at 918. Plaintiff brought an action in the trial court seeking damages for wrongful discharge, without first making a claim pursuant to the PHRA. The trial court held that the PHRC had initial jurisdiction over the matter because it involved firings in connection with sex harassment and discrimination in the workplace. Because plaintiff had not sought redress through the PHRC before turning to the courts, the trial court dismissed her claims. The Superior Court reversed the trial court, holding that the administrative remedies available through the PHRC did not prevent plaintiff from seeking judicial remedies based upon common law rights. In so holding, the Superior Court expressly overruled its prior decision of *Householder*, 360 Pa.Super. 290, 520 A.2d 461 (holding that to assert a claim for wrongful discharge from employment that is cognizable under the PHRA, an aggrieved party must utilize administrative remedies available through the PHRC before asserting a cause of action in court).

On appeal, this Court viewed the decision in *Householder* as correct, and held that the Superior Court erred in overruling

it. *Clay*, 559 A.2d at 918. We explained that the PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon sex discrimination. *Id.* We recognized that the legislature intended to make the administrative procedures of the PHRA a mandatory means of enforcing the right created therein:

> Clearly, too, the right in question is of purely statutory origin, for ... common law rights to be free from termination of at-will employment are not generally recognized, and we have never held that at-will employment terminations arising from sex discrimination are actionable at common law. In short, the remedy that should have been invoked by Employees was the one provided by the PHRA.

*Clay*, 559 A.2d at 919. Indeed, the court concluded that "there is no basis for belief that there was intended to be broad and unrestricted access to civil actions, outside of the PHRA, alleging discriminatory termination of at-will employment." *Clay*, 559 A.2d at 921. *See also Householder*, 360 Pa.Super. 290, 520 A.2d 461 (rejecting a claim that the PHRA so clearly proclaims a public policy against discrimination that a violation of the act gives rise to an independent, common law cause of action for wrongful discharge).

Unlike the plaintiff in *Clay*, Employee herein did attempt to exhaust her administrative remedies with the PHRA; however, the PHRA dismissed her complaint because Employer is not included in the statutory definition of "employer." Notwithstanding this distinction, *Clay* teaches that there is no independent common law remedy for termination of an at-will employee on the basis of sex discrimination. *Clay*. The PHRA was crafted to provide an explicit statutory remedy for unlawful discrimination claims, exacting a narrow exception to at-will employment. *See Householder*, 520 A.2d at 464; *Sola v. Lafayette College*, 804 F.2d 40 (3d Cir.1986); *Carney v. PHRC*, 45 Pa.Cmwlth. 10, 404 A.2d 760 (1979). Accordingly, victims of "unlawful discriminatory practices" as established by the PHRA may pursue relief pursuant to the act. The PHRA, however, did not upset the presumption of at-will

employment for general claims of discrimination that are not defined as unlawful under the act.

Employee seeks to isolate the broad public policy of Section 952 from the substantive and procedural remainder of the PHRA. She focuses on Section 952's discussion of "all individuals" as demonstrating a public policy exception to at-will employment. *See* 43 P.S. § 952. We find no basis, however, to create an independent cause of action for termination of an at-will employee outside of the remedies established by the legislature through the PHRA. Although the legislature articulated a public policy to eliminate all forms of invidious discrimination, including sex discrimination in the workplace, it chose to define the right to freedom from discrimination in terms of the number of individuals employed by the employer.[10]

By defining employer in terms of the number of employees, the legislature has declined to make sex discrimination actionable against employers of fewer than four employees. This exemption set forth in the PHRA is similar to the exemption in Title VII, the cornerstone of federal anti-discrimination law, which sets a threshold for employer coverage at fifteen employees. 42 U.S.C. § 2000e–16(a). Although there is no specific Pennsylvania legislative history available explaining why the legislature chose to exempt small employers, it is noteworthy that it has lowered the necessary number of employees on two occasions, thus widening the scope of those employers barred by the PHRA from unlawful discrimination. *See* 43 P.S. § 954 (1955), Oct. 27, P.L. 744, § 4 (defining "employer" as one employing twelve or more employees); Act

10. The dissent likewise seeks to isolate Section 952 from the rest of the PHRA. Unfortunately, the legislature has made the PHRA the exclusive state law remedy for unlawful discrimination, preempting the advancement of common law claims for wrongful discharge based on claims of discrimination. *Accord Brennan v. Nat'l Tel. Directory Corp.*, 850 F.Supp. 331, 344 (E.D.Pa.1994) ("[T]he PHRA preempts parties from bringing common law claims for wrongful discharge based on claims of discrimination because the remedies of PHRA are exclusive."). To create an exception to the at-will employment doctrine as the dissent advocates, despite a legislative enactment that preempts common law causes of action for unlawful discrimination, is contrary to the intended exclusivity of the PHRA.

1966, Jan. 24, P.L. (1965) 1525, § 1 (lowering the employee requirement from twelve to six); Act 1967, Nov. 27, P.L. 622, § 1 (lowering the employee requirement from six to four).[11]

The likely explanation regarding the legislature's decision to exempt small firms from complying with anti-discrimination laws is that the legislature sought to protect the Commonwealth's smallest employers from the burdens associated with complying with the law and defending against discrimination claims.[12] *See* Richard Carlson, *The Small Firm Exemption and the Single Employer Doctrine in Employment Discrimination Law,* 80 St. John's L.Rev. 1197 (2006); *Clackamas Gastroenterology Assoc., P.C. v. Wells,* 538 U.S. 440, 446–447, 123 S.Ct. 1673, 155 L.Ed.2d 615 (2003) (noting that congressional intent to spare small firms the cost of compliance must be respected); *Thibodeau v. Design Group One Architects, LLC,* 260 Conn. 691, 802 A.2d 731, 740–41 (2002) (finding that the primary reason to exempt small employers from anti discrimination law was to protect small employers from exposure to liability); *Papa v. Katy Industries, Inc.,* 166 F.3d 937, 940 (7th Cir.1999) ("The purpose [of the minimum employee threshold under Title VII] is not to encourage or condone discrimination.... [Rather] [t]he purpose is to spare very small firms from the potentially crushing expense of mastering

11. While debating whether to lower the employee threshold from twelve to six in 1966, members of the legislature moved to lower the threshold even further, to one employee, thereby covering every employer in the Commonwealth. This motion, however, did not prevail. *See* 1965 Pa.Legis.J. 1505, 1507 (Remarks of Senator McCreesh).

12. The dissent suggests that a more natural way to interpret the General Assembly's exemption of small employers from the reach of the PHRA is to find that the General Assembly intended to place the administrative burdens of the PHRA only on larger employers. The procedures contained in the PHRA, however, were designed to render prompt and cost-efficient decisions, enabling parties to avoid burdensome, inefficient, time consuming, and expensive litigation. *See Clay,* 559 A.2d at 919–20 (noting that the expertise of the PHRC motivated the legislature to limit aggrieved parties from seeking remedies in the courts, and that the General Assembly viewed the procedures provided by the PHRA as the most effective approach to the problem of discrimination.). The dissent's position in this regard assumes, without evidence, that, contrary to design, administrative compliance, and litigation is more burdensome than litigation in the courts.

the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail."); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.1995) (finding that Congress sought to protect small employers from costs associated with litigating discrimination claims under Title VII by establishing minimum employee requirement); *Miller v. Maxwell's International, Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied sub nom. Miller v. La Rosa*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). Other possible reasons that the state legislature chose to exempt small employers is that it, like Congress, was concerned with "the protection of intimate and personal relations existing in small businesses. . . ." *Tomka*, 66 F.3d at 1314; its fundamental objective was to eliminate discrimination on a larger scale, *see Jennings v. Marralle*, 8 Cal.4th 121, 32 Cal.Rptr.2d 275, 876 P.2d 1074 (1994); and the legislature was concerned with the difficulties inherent in detecting and policing discrimination on a small scale. *Id.*, at 1074.

The General Assembly has recognized the pervasive invidiousness of discrimination in the workplace and attempted by the PHRA to create a procedure and agency specifically designed and equipped to address this persisting problem and to provide relief to citizens who have been unjustly injured. In attempting to fashion a remedy to address this evil, the legislature chose to exempt small employers of fewer than four employees. Whatever the reason for the small-employer exemption, we cannot enforce the public policy articulated in Section 952 of the PHRA while simultaneously ignoring the definition of employer in Section 954(b), or the specific conduct characterized as unlawful in Section 955.[13]

13. While we acknowledge the unfairness to employees who are sexually discriminated against by small employers not covered by the PHRA, we cannot undermine the legislature's clear intention to preempt a common law cause of action for unlawful sex discrimination. In the absence of a constitutional violation, it is for the legislature to determine whether the unfairness caused by the statutory scheme of the PHRA warrants legislative change. As the Supreme Court of Utah noted in confronting an identical issue,

■ Indeed, our precedent adhering to the at-will employment presumption indicates that we can only declare the public policy of this Commonwealth where it is "so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it...." *Mamlin*, 17 A.2d at 409. The legislature's decision to lower the employee threshold from twelve to six to four, but not to one, indicates the lack of unanimous opinion that every employee should be protected from sex discrimination as Employee asserts. The legislature has had the opportunity to argue the merits of exempting small employers from compliance and to decide exactly where it should establish the threshold. It explicitly chose not to extend the protections against discrimination to employees of small employers. The wisdom of this decision is not before us. Where the legislature has spoken, we will not interpret statutory provisions to advance matters of public interest. *See Geary*, 319 A.2d at 176 (recognizing that the legislature can create statutory exceptions to at-will employment). Rather, we are bound by the terms of the PHRA and Pennsylvania's adherence to the doctrine of at-will employment to reject Employee's arguments. Extending protections afforded by a statute beyond its explicit limitations would require the courts to act as a super-legislature.

As we developed in *Geary*, restricting the at-will employment presumption would unwisely interfere with "the legitimate interest of employers in hiring and retaining the best personnel available. The everpresent [sic] threat of suit might well inhibit the making of critical judgments by employers concerning employee qualifications." 319 A.2d at 179. Given our adherence to the rule of at-will employment, and the sweeping policy change envisioned by Employee that would

> This court is no friend to employment discrimination. Nevertheless, we recognize that our decision today leaves many Utah workers unable, should the need arise, to obtain relief from employment discrimination. As a result, some will undoubtedly accuse this court of opening the door for small employers in Utah to discriminate. Those who do so ignore the reality that it is the legislature that primarily holds the power to open and shut that door.
>
> *Gottling v. P.R. Inc.*, 61 P.3d 989, 997 (Utah 2002).

accompany recognition of a common law cause of action for wrongful discharge resulting from sex discrimination, the legislative process is the appropriate forum to achieve a change in the parameters of at-will employment.

Moreover, the consequence of finding a public policy exception to at-will employment for employees discriminated against by employers that do not meet the statutory definition of employer would disturb the administrative scheme of the PHRA. It would result in a two-tier system, whereby victims of discrimination proceed either through the PHRC or through the common pleas courts depending on the size of their employer. This result would not advance the legislative intent that the PHRC would bring to bear particular expertise in handling discrimination cases. *See Clay*, 559 A.2d at 919; *Fye v. Central Transportation Inc.*, 487 Pa. 137, 409 A.2d 2, 5 (1979) ("It is clear from the legislation that the General Assembly was of the view that the procedures provided by the [PHRA] represented the most effective approach to the problem of discrimination."); *PHRC v. Feeser*, 469 Pa. 173, 364 A.2d 1324, 1326 (1976) (expressly noting the inadvisability of having the courts of common pleas decide discrimination cases, stating that "the Legislature has chosen, in the PHRA, to charge an administrative agency with the jurisdiction initially to receive, investigate, conciliate, hear, and decide complaints alleging unlawful discrimination.").

Further, if we permitted a common law cause of action for the termination of an at-will employment under these facts, where the employer is expressly not covered by the statute that created the public policy, we would create the concern that other statutes that explicitly exempt certain employers from compliance actually express a general public policy and apply even to those the legislature chose to exclude. If the legislature chooses to expand statutes to cover more employers, it is clearly within its authority to do so. Our role, however, does not include expanding statutes beyond their terms.

Finally, Employee directs our attention to Section 962(c) of the PHRA, which provides that upon dismissal of a complaint,

514

the complainant has one year to bring an action in the courts based on the right to freedom from discrimination granted by the PHRA. She urges that because the PHRC dismissed her complaint, she is entitled to bring her cause of action in the courts. This position, however, ignores the qualification that the ultimate right to resort to the courts is "based on the right to freedom from discrimination granted by this act." 43 P.S. § 962(c). The act does not grant Employee a right to freedom from discrimination because it has defined "employer" in a manner that excludes Employer. Moreover, the obvious intent of Section 962(c) is to permit a complainant who is dissatisfied with the PHRC's decision-making or advocacy in a cognizable case to seek further relief. For all the reasons articulated herein, it should not be read to *sub silentio* expand the legislatively created right to sue a defined employer for sex discrimination.

We now turn to Employee's assertion that the Equal Rights Amendment supports a finding of public policy sufficient to create an exception to the employment at-will doctrine in cases of sex discrimination without regard to the size of the employer. In 1971, Pennsylvania adopted an equal rights amendment that commands that "[e]quality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." PA. CONST. art. I, § 28. This Amendment insures equality of rights under the law and seeks to eliminate sex as a basis for distinction. "The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman." *Henderson v. Henderson*, 458 Pa. 97, 327 A.2d 60, 62 (1974).

The language of the Equal Rights Amendment establishes that it reaches sex discrimination "under the law." *Hartford*, 482 A.2d at 549. We have interpreted its reach as circumscribing the conduct of state and local government entities and officials of all levels in their formulation, interpretation, and enforcement of the law. *Id.* Any action authorized

by a statute of this Commonwealth must, therefore, comply with the guarantee of equality espoused in the Equal Rights Amendment. *See Bartholomew on Behalf of Bartholomew v. Foster*, 115 Pa.Cmwlth. 430, 541 A.2d 393, 397 (1988), *aff'd per curiam* 522 Pa. 489, 563 A.2d 1390 (1989).[14]

We have not hesitated to effectuate the Equal Rights Amendment's prohibition of sex discrimination by striking down statutes and common law doctrines predicated upon traditional or stereotypical roles of men and women. *See Hartford*, 482 A.2d at 548 (applying the Equal Rights Amendment to find that the Insurance Commissioner properly disapproved of an automobile insurer's discriminatory sex-based rates); *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635, 639 (1977) (plurality opinion) ("Tender years doctrine" offends concept of equality of the sexes embraced in Equal Rights Amendment.); *Adoption of Walker*, 468 Pa. 165, 360 A.2d 603 (1976) (holding that the Adoption Act's failure to require parental consent of unwed father as well as unwed mother violates Equal Rights Amendment); *Butler v. Butler*, 464 Pa. 522, 347 A.2d 477 (1975) (abolishing presumption that where husband obtains his wife's property without adequate consideration a trust is created in his wife's favor); *Commonwealth v. Santiago*, 462 Pa. 216, 340 A.2d 440 (1975) (discarding doctrine of "coverture" requiring presumption that wife who commits crime in presence of husband was coerced by husband); *DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975) (abolishing presumption that husband is owner of household goods used and possessed by both spouses); *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974) (invalidating statutory scheme under which women are eligible for

14. *See* 1 Pa.C.S. § 2301, which codified the Equal Rights Amendment as follows:

Equality of rights based on sex—(a) General rule.—In recognition of the adoption of section 28 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that where in any statute heretofore enacted there is a designation restricted to a single sex, the designation shall be deemed to refer to both sexes unless the designation does not operate to deny or abridge equality of rights under the law of this Commonwealth because of the sex of the individual.

parole immediately upon incarceration while men must serve minimum sentence); *Henderson v. Henderson, supra* (striking down statute providing for alimony *pendente lite,* counsel fees and expenses in divorce action for wife but not husband); *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974) (abolishing presumption that father must bear principal burden of support of minor children); *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974) (holding that the Equal Rights Amendment requires that wife as well as husband be permitted to recover for loss of consortium.)

As this precedent demonstrates, we have applied the Equal Rights Amendment to invalidate legislation embodying gender classifications. We have not invoked the Equal Rights Amendment to provide a private cause of action for tort, nor have we invoked it to invalidate a statute that makes no distinctions based on gender. Employee has not identified any law under which she is being discriminated against. She is not being denied equal rights under the law due to her gender. Rather, the legislature has made the policy decision to exempt small employers from compliance with the PHRA. Therefore, Employee is being discriminated against because she works for a small employer. Such a distinction does not implicate the Equal Rights Amendment.

■ Because we hold that neither the PHRA nor the Equal Rights Amendment provides a public policy exception to the at-will employment doctrine for sex discrimination by an employer not covered by the PHRA, we disagree with the Superior Court's analysis regarding the Remedies Clause. The Superior Court, having concluded contrary to our holding that the PHRA and the Equal Rights Amendment provided a public policy exception to the at-will employment doctrine, stated that it was difficult to believe that the legislature would first define certain acts as illegal via both the PHRA and the constitution, thus establishing a public policy unequivocally condemning such conduct, then remove all judicial recourse for the victims of that conduct. The legislature, however, did not characterize as unlawful all forms of discrimination; rather, it defined unlawful discrimination as that perpetrated by

"any employer," which, as described above, includes employers of four or more employees. The PHRA, therefore, both defined the right and the remedy. *See Clay.* It did not, as the Superior Court found, extend the right to freedom from sex discrimination in the workplace to employees of smaller employers as defined by the act.

We conclude, therefore, that Employee has not demonstrated that there exists a clear mandate of public policy prohibiting sex discrimination of all employees sufficient to overcome the employment at-will doctrine. The PHRA, which creates a narrow exception to employment at-will, provides the remedy for the conduct it prohibits. It does not demonstrate a public policy sufficient to overcome its own limitation to employers of four or more employees. We cannot overlook the fact that the General Assembly decided not to make illegal the behavior of which Employee complains. While the PHRC announces a right to be free from sex discrimination in the workplace, 43 P.S. 955(a), it qualifies this right by granting it only where the employer meets the statutory definition. *Id.;* 43 P.S. 954(b). It is not the role of this Court to create a private cause of action where the General Assembly has decided not to create a right or a remedy for victims of sex discrimination by small employers. Allowing a discharged at-will employee to commence an action in the courts premised on the right to be free from discrimination based on sex when the statute creating such a right does not extend it to her would be logically inconsistent with the legislature's having limited the PHRA's reach to employers of four or more employees. We reverse the order of the Superior Court.

Justice SAYLOR, EAKIN and McCAFFERY and Justice GREENSPAN join the opinion.

Justice TODD files a dissenting opinion in which Chief Justice CASTILLE joins.

Justice TODD, dissenting.

I respectfully, but vigorously, dissent. I believe the Pennsylvania Constitution, supported by statutory law, makes it

518

unmistakably clear that the public policy of our Commonwealth simply does not tolerate invidious gender discrimination—here in the form of sexual harassment—with respect to continued employment. For the reasons stated more fully below, while I would reaffirm the vitality of the at-will doctrine in our Commonwealth, I believe that we should join other states that have considered similar issues and recognize a cause of action for wrongful discharge, for those individuals who fall outside of the coverage of the Pennsylvania Human Relations Act ("Human Relations Act"),[1] to redress a termination that contravenes our Commonwealth's fundamental public policy against gender discrimination. Thus, I would affirm the order of the Superior Court.[2]

As explained by the Majority, for more than 100 years, the long-standing law that has consistently governed employer-employee relationships in our Commonwealth is the at-will doctrine. *Henry v. Pittsburgh & L.E.R. Co.*, 139 Pa. 289, 297, 21 A. 157 (1891). Under the at-will doctrine, it is generally true that an employer may terminate an employee at any time and for any reason. *Id.* The policies underlying the at-will doctrine are significant; among other attributes, the doctrine permits the employer to hire and retain the best personnel and allows the employer and the employee to enter into an uncomplicated and flexible relationship that can easily be terminated by either party. While the at-will doctrine continues to govern most employment relationships, parties may voluntarily limit the at-will doctrine through individual employment contracts. Additionally, statutory enactments may limit the reasons for which an employer may terminate the employment relationship.

Over 30 years ago, our Court also embraced a common law exception to the at-will doctrine in the form of a claim for wrongful discharge where an employee's termination contra-

1.  43 P.S. §§ 951–963.

2.  As does the Majority, I note that, for purposes of this appeal, we assume that sexual harassment of the type alleged in this case constitutes a form of gender discrimination under our Commonwealth's law. Majority Opinion at 492 n. 4, 975 A.2d at 557 n. 4.

venes a "clear mandate of public policy." *Geary v. United States Steel Corp.*, 456 Pa. 171, 185, 319 A.2d 174, 181 (1974). As recognized by the Majority, in discerning whether there exists such a dominant public policy, our Court looks to the Pennsylvania Constitution, legislative enactments, and judicial decisions. Majority Opinion at 501–02, 975 A.2d at 563; *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 316, 750 A.2d 283, 288 (2000). While the power of our courts to formulate pronouncements of public policy is limited, "when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it . . . a court may constitute itself the voice of the community" and declare public policy. *Mamlin v. Genoe (City of Philadelphia Police Beneficiary Ass'n)*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).

The issue before us is whether there is a clear mandate of public policy against gender discrimination that serves as a foundation for the recognition of a common law claim for wrongful discharge for employees not covered by the Human Relations Act. Unlike the Majority, I find that explicit and clear mandate of public policy against termination based upon sex in our Constitution and statutory law which supports such a claim for wrongful termination.

Our Commonwealth has long been in the vanguard of constitutional gender equality and has expressly set forth an explicit public policy against discrimination based upon sex. Specifically, in 1971, our state became the first to pass an equal rights amendment to its constitution. Our Constitution's Equal Rights Amendment specifically addresses sex-based equality and prohibits the abridgement of equality of rights under the law on the basis of sex. PA. CONST. art. I, § 28 ("Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."). We explained, "[t]he thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction." *Henderson v. Henderson*, 458 Pa. 97, 101, 327 A.2d 60, 62 (1974). Our Court further clarified, "[t]he sex of citizens of

this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman." *Id.* As then-Justice Stephen Zappala later emphasized, "[n]o more clear statement of public policy exists than that of a constitutional amendment. The passage of the Pennsylvania Equal Rights Amendment, Article I, § 28 is the expression of public policy." *Clay v. Advanced Computer Applications,* 522 Pa. 86, 100, 559 A.2d 917, 924 (1989) (Zappala, J. concurring). Thus, it is beyond peradventure that our citizenry as a matter of public policy, explicitly reflected in our organic charter, does not tolerate gender discrimination.

Not only does our Constitution set forth a clear mandate of public policy against gender discrimination, but our legislature has made this manifest as well. The Human Relations Act, adopted in 1955–16 years prior to the Equal Rights Amendment—recognized the insidious nature of discrimination based upon gender. Specifically, the Human Relations Act provides that it is an unlawful discriminatory practice for an employer to, *inter alia,* discharge an individual on the basis of sex. 43 P.S. § 955.

The Majority expresses its agreement with Appellant Walter Harpster that it is the General Assembly which sets public policy in this arena, and that only employees who are employed by an "employer"—defined in the Human Relations Act, *inter alia,* as those employing four or more persons within the Commonwealth—are protected from discrimination. 43 P.S. § 954(b). Stated another way, the Majority determines that, as the public policy against gender discrimination announced in the Human Relations Act does not apply to smaller employers, employees of these employers may be subjected to discrimination without recourse.

Respectfully, I do not view the Human Relations Act in the same fashion. First, the language of the Human Relations Act is robust and broad in stating a clear mandate against gender discrimination. Indeed, the General Assembly could

not have spoken more forcefully when it described the corrosive effect of invidious discrimination:

> Such **discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state** ... [discrimination] deprives large segments of the population of the Commonwealth of earnings necessary to maintain decent standards of living, necessitates their resort to public relief and intensifies group conflicts, **thereby resulting in grave injury to the public health and welfare** ....

43 P.S. § 952(a) (emphasis added).

Moreover, the language employed by the General Assembly makes concrete a policy that transcends the particular employees subject to the statute. Specifically, the General Assembly's declaration of policy is not limited to employees of an employer as defined in the statute, but to the employment of "all individuals":

> It is hereby declared to be the public policy of this Commonwealth **to foster the employment of all individuals in accordance with their fullest capacities regardless of their** race, color, religious creed, ancestry, age, **sex,** national origin, handicap or disability, ... **and to safeguard their right to ... hold employment without such discrimination, to assure equal opportunities to all individuals** ....

43 P.S. § 952(b) (emphasis added).

Thus, the declaration of policy contained in the Human Relations Act undergirds our Constitution's clear mandate of public policy condemning discrimination that transcends those employees and employers that are subject to the statute.

Additionally, rather than reading the Human Relations Act as granting a license to smaller employers to discriminate, a more natural interpretation of the statute that fits more comfortably with the General Assembly's declaration of policy is a finding that the legislature only intended to place the administrative burdens and procedures contained in the Act upon certain larger employers that would be able to absorb

the associated costs of such procedures. Specifically, under the Human Relations Act, a covered employer must not only comply with certain affirmative requirements, but, when faced with a claim of alleged discrimination, must comply with the administrative procedural scheme set forth in the statute and face the specter of a complaint brought by the Pennsylvania Human Relations Commission on behalf of the employee, bringing with it the resources and power of the Commonwealth. While subjecting only larger employers to such burdens may be sound policy, it does not follow that, in doing so, the General Assembly intended to permit smaller employers to terminate an individual due to gender and leave the individual without recourse.

Furthermore, a finding of a cause of action for those individuals who fall outside of the coverage of the Human Relations Act is entirely consonant with the conclusions reached by courts which have recognized a claim for wrongful discharge based upon a violation of public policy expressed in a state constitution, even when the state legislature has enacted an anti-discrimination statute which limits the size of the employer covered by the statute. *See, e.g., Molesworth v. Brandon,* 341 Md. 621, 672 A.2d 608 (1996) (upholding Maryland's common law cause of action for wrongful discharge of an employee based on sex discrimination against an employer with less than 15 employees where public policy against sex discrimination was evidenced by constitutional amendment, statutes, and executive order); *accord Thurdin v. SEI Boston, LLC,* 452 Mass. 436, 895 N.E.2d 446 (2008) (concluding employee may bring claim for sex discrimination under state equal rights act where employer was not covered by Massachusetts' state employment discrimination law); *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653 (1995) (recognizing common law tort claim for wrongful discharge in violation of Ohio public policy based upon statutory and judicial sources); *Williamson v. Greene,* 200 W.Va. 421, 490 S.E.2d 23 (1997) (determining common law claim for retaliatory discharge based on sex discrimination in light of West Virginia's public policy found in state human relations act); *Roberts v. Dudley,*

140 Wash.2d 58, 993 P.2d 901 (2000) (finding claim for wrongful discharge in violation of Washington's public policy against gender discrimination based upon statutes and judicial decisions); *but see Jarman v. Deason,* 173 N.C.App. 297, 618 S.E.2d 776 (2005) (concluding no claim of wrongful discharge for age discrimination in North Carolina relying on legislative prerogative but in absence of constitutional basis for public policy); *Burton v. Exam Ctr. Indus. & Gen. Med. Clinic, Inc.,* 994 P.2d 1261 (Utah 2000) (same).

Finally, while I would recognize a claim for wrongful discharge for those individuals not covered by the Human Relations Act,[3] such a cause of action would be limited. Unlike a claim under the Human Relations Act which could assert a multitude of statutorily-defined discriminatory acts on the part of an employer, a cause of action for wrongful discharge would be just that—a claim limited to an assertion that one was terminated based upon gender in violation of our clear mandate of public policy against gender discrimination as expressed in our Constitution and statutory law.

In sum, unlike the Majority, I simply cannot ascribe to our General Assembly the intent to prohibit employers with four or more employees from terminating an individual by sexually harassing him or her, but to allow those employers with less than four employees to sexually harass an individual to the point of termination with impunity and without redress. Instead, I would reaffirm our Commonwealth's long-standing history as an at-will state, but I would also find that our Constitution, supported by relevant statutory law, provides a clear mandate of public policy that supports a common law action for wrongful discharge based upon gender discrimination for those individuals falling outside of the coverage of the Human Relations Act. For the above-stated reasons, I respectfully dissent and would affirm the order of the

**3.** Those employees covered by the Human Relations Act must utilize the administrative procedures and remedies in seeking redress for alleged discrimination through the Pennsylvania Human Relations Commission. *Clay,* 522 Pa. at 92, 559 A.2d at 920.

524

Superior Court.[4]

Chief Justice CASTILLE joins this dissenting opinion.

**4.** In footnote 10, the Majority asserts that the Human Relations Act is the "exclusive state law remedy for unlawful discrimination, *preempting* the advancement of common law claims for wrongful discharge based on claims of discrimination." Majority Opinion at 509 n. 10, 975 A.2d at 567–68 n. 10 (emphasis added). In reaching this conclusion, the Majority does not engage in any traditional preemption analysis, but, rather, references a 15–year–old federal district court case. While the terms of the Human Relations Act may "exempt" smaller employers from its coverage, there is no suggestion of preemption, and prior to today's decision, our Court has never addressed this issue. Moreover, the Majority's contention of statutory preemption avoids the thrust of what I believe to be the proper analysis: a limited common law claim for wrongful discharge based upon gender discrimination that is grounded upon public policy as plainly expressed in the Pennsylvania Constitution, not solely in the statute. Furthermore, in footnote 12, the Majority criticizes the dissenters for offering "without evidence" the proposition that "administrative compliance and litigation is more burdensome than litigation in courts." Majority Opinion at 510 n. 12, 975 A.2d at 568 n. 12. There is no need for "evidence" to establish what the Majority already acknowledges in its opinion: there exists under the Human Relations Act *both* a mandatory administrative process *and* the specter of subsequent litigation in the courts. Majority Opinion at 506–07, 975 A.2d at 565–66; 43 P.S. § 962(c). Thus, it is self-evident that having to first exhaust an administrative process and then litigate in the judicial system would be more burdensome and expensive than only litigating in the courts.