NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3064
_____

DARNELL TURNER,

Appellant

v.

PRO-SOLUTIONS FOR CHIROPRACTIC, INC.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-07-cv-01269)
District Judge:  Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
July 15, 2010

Before: FUENTES, VANASKIE, and WEIS, Circuit Judges.

(Opinion Filed: August 5, 2010)

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge:

Darnell Turner, an African-American, brought this Title VII action against his

-1-

former employer, Pro-Solutions For Chiropractic, Inc. ("Pro-Solutions"), alleging that his firing was the result of racial discrimination. The District Court granted defendant Pro-Solutions' motion for summary judgment. The Court concluded that Turner had satisfied the first stage of the familiar McDonnell-Douglas inquiry, making out a prima facie case for race employment discrimination, and that Pro-Solutions had met its burden at the second stage by explaining that it terminated Turner because it suspected he had unlawfully attempted to sell its equipment. However, the court found that at the third stage of the inquiry, Turner failed to show that Pro-Solutions' explanation for its employment decision was a pretext for discrimination.

Turner appeals, arguing that a jury could disbelieve Pro-Solutions' stated reason for firing him because he was not confronted about the attempted theft while he worked at the company, and since his employer could not articulate a specific basis for fearing retaliation from him. We disagree and will affirm.[1]

### I.

Because we write primarily for the parties, we set forth only the facts and history that are relevant to our conclusion. Defendant Pro-Solutions sells therapeutic and diagnostic equipment, including television monitors, for use by chiropractors. Plaintiff Turner, an African-American, began working for the company in February 2006, shipping

---

[1] The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

and tracking products sent from a warehouse in Cecil, Pennsylvania to Pro-Solutions' customers. Prior to Turner's hiring, Pro-Solutions outsourced the warehousing and shipping for which Turner became responsible.

Nicholas Pisciottano, the brother of Pro-Solutions' President and CEO, Dr. Maurice Pisciottano, also worked in the warehouse, though he was not involved in packaging and shipping. Pisciottano is Caucasian. In May 2006, upon Turner's recommendation, Pro-Solutions hired Bryan Cherry, who is African-American, to assist Turner in the warehouse.

In September 2006, the warehouse owner, Richard Erenberg, told Dr. Pisciottano that Turner had asked one of Erenberg's employees if he wanted to buy a television out of the warehouse. Dr. Pisciottano asked Harry Freucht, the Chief of Police for nearby Peters Township, for advice. Freucht explained that the warehouse was outside his jurisdiction, but suggested Pisciottano set up a "sting" operation and contact the Cecil police.

Dr. Pisciottano instead told Pro-Solutions' Director of Operations Edward Bishop to fire Turner, Cherry, and Nicholas Pisciottano, and tell them the company intended to look into outsourcing the warehouse functions. According to Dr. Pisciottano, he was concerned about retaliation should he accuse Turner of stealing. "[H]e could beat me up, he could pull a gun on me," Dr. Pisciottano explained in his deposition testimony. (Supp. App. at 39a.) "People who sell [stolen] TVs, I think they're probably a little crazy. I don't know what else they might do." (Id. at 39a.)

-3-

Pro-Solutions did not outsource its warehouse operation. Approximately one week after the three firings, the company hired Timothy Linden, who is Caucasian, to work in the warehouse. He quit about one month later. Employees already working for Pro-Solutions assumed warehouse duties thereafter.

According to the affidavit of Raymond Hunter, an employee of another warehouse tenant, Nicholas Pisciottano told him that what the company had done to Turner was "messed up," that his brother Dr. Pisciottano "did not 'do well' around black people," and that the explanation for the firings "was false." (Rep. & Recc. at 4.) Hunter relayed this to Cherry, who told Turner. However, apart from the alleged employment discrimination complained of by Turner in this case, neither Turner nor Cherry ever experienced any form of discrimination, nor heard any derogatory comments concerning their race, while they were employed at Pro-Solutions.

On September 9, 2007, Turner filed a complaint against Pro-Solutions, alleging that his firing was based on illegal race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*, 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955(a).[2] At the close of discovery, Pro-Solutions filed a motion for summary judgment. Following discovery, the District

---

[2] Cherry filed a substantially similar complaint in December 2007. The District Court granted defendant Pro-Solutions' motion for summary judgment. Cherry did not appeal. Cherry v. Pro-Solutions for Chiropractic, Inc., No. 07-1692, 2009 U.S. Dist. LEXIS 86594 (W. D. Pa. Sept. 22, 2009).

Court accepted the magistrate judge's Report and Recommendation and granted defendant's motion for summary judgment. Turner filed a timely notice of appeal.

**II.**

This Court reviews de novo the District Court's decision granting summary judgment, applying the same standard of review as that used by the District Court. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence must be viewed in the light most favorable to Turner, the non-moving party. Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999).

Turner's Title VII race discrimination claims must be scrutinized under the three-stage inquiry of McDonnell Douglas Corp. v. Green, and its progeny. The analysis required for adjudicating Turner's claim under the PHRA is identical, and we therefore address the claims together. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000).

Turner met his initial burden to present a prima facie case of race employment discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). The burden of production shifted to Pro-Solutions to articulate a legitimate, non-discriminatory reason for Turner's termination – a "relatively light burden." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). After Pro-Solutions explained that it suspected Turner had attempted to steal company property,

the burden shifted back to Turner to show by a preponderance of the evidence that the employer's proffered reason was pretextual.  Id. at 763.

The sole issue is whether the District Court correctly concluded, at the third stage of the inquiry, that Turner failed to show that Pro-Solutions' explanation for its employment decision was a pretext for discrimination.  To avoid summary judgment when Pro-Solutions provided legitimate, non-discriminatory reasons for firing him, Turner must point to

> some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Id. at 764.

We agree with the District Court that Turner has not demonstrated that Pro-Solutions' explanation for firing him is a pretext for unlawful discrimination.  The evidence presented by Turner must "allow a fact finder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."  Id.  Turner's burden of production accords with the burden of persuasion resting, at all times, with the plaintiff.  See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The resulting "difficult burden" on the plaintiff is "inherent" to adjudication of employment discrimination disputes.  Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992).

Turner has offered no evidence to dispute Dr. Pisciottano's and Erenberg's testimony concerning Turner's offer to Erenberg's employee to buy a television out of the warehouse, or Chief Freucht's testimony that Dr. Pisciottano spoke with him about the attempted theft. Rather, Turner argues that a jury could disbelieve Pro-Solutions' explanation because he was not confronted about the theft while employed at Pro-Solutions. However, an employer is not required to discuss accusations of theft with an at-will employee before firing him. See Weaver v. Harpster, 601 Pa. 488, 500 (2009). Whether doing so is a better business practice is irrelevant to the question of pretext. Fuentes, 32 F.3d at 765.

Turner also argues that a jury could disbelieve Pro-Solutions' explanation because Dr. Pisciottano failed to articulate a specific reason for fearing retaliation from Turner. However, he did say: "People who sell [stolen] TVs, I think they're probably a little crazy. I don't know what else they might do." (Supp. App. at 39a.) Moreover, while plaintiff's evidence need not directly contradict defendant's explanation, Turner may not simply argue that the fact finder should disbelieve his former employer's explanation. Fuentes, 32 F.3d at 764. That Dr. Pisciottano could not specifically identify the basis for his fear of retaliation does not undermine the evidence supporting his suspicions of Turner's illegal activities.

**III.**

For the foregoing reasons, we affirm the judgment of the District Court.