J-A16020-16

2017 PA Super 73

| | |
|---|---|
| JAMES GREEN<br><br>            Appellant<br><br>            v.<br><br>PENNSYLVANIA PROPERTY AND<br>CASUALTY INSURANCE GUARANTY<br>ASSOCIATION<br><br>            Appellee | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br><br><br><br><br>No. 1204 WDA 2015 |

Appeal from the Order Entered July 9, 2015
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD 13-015278

BEFORE:  SHOGAN, OLSON and STRASSBURGER,* JJ.

OPINION BY OLSON, J.:                    **FILED MARCH 21, 2017**

Appellant, James Green, appeals from an order entered on July 9, 2015, which granted summary judgment in favor of Appellee, Pennsylvania Property and Casualty Insurance Guaranty Association (PPCIGA).[1]  After the careful consideration, we vacate and remand for further proceedings.

The facts and procedural history in this case are as follows.  Appellant sustained injuries on July 4, 1996 when he received a gunshot wound to his leg.   At the time, Appellant was a patron at Kong's Night Club, an establishment owned and operated by Uropa, Inc. (Uropa).   George

_____

[1] The trial court denied Appellant's motion for summary judgment by separate order entered on the same day.

*Retired Senior Judge assigned to the Superior Court.

Dankovich (Dankovich), the club's manager, had possession of the firearm that discharged and wounded Appellant. During this period, Uropa carried a commercial general liability policy issued by Security Indemnity Insurance Company (Security Indemnity).

By letter dated September 18, 1996, Appellant's then-counsel notified Security Indemnity that a claim had accrued to Appellant under the Uropa policy. On September 24, 1996, Security Indemnity advised that it would neither defend nor indemnify Uropa with respect to Appellant's claim pursuant to the "assault and battery" and "expected or intended injury" exclusions within the policy. Security Indemnity further advised that Uropa breached its duty to give notice of the claim within a reasonable period of time.

On December 10, 1996, Appellant filed a complaint against Uropa and Dankovich seeking recovery for bodily injuries arising from the gunshot wound. The complaint alleged three counts of negligence against the defendants. On December 30, 1996, counsel for Dankovich sent a letter to Security Indemnity, together with a copy of the complaint, requesting that the insurer provide a defense against Appellant's claims on grounds that the shooting was accidental and Dankovich was acting in the course and scope of his employment with Uropa when the incident occurred.

Security Indemnity replied to Dankovich's counsel by letter dated January 7, 1997. The insurer's reply enclosed a copy of its September 24,

1996 coverage denial letter with respect to Uropa and explained that the denial extended to Dankovich.

Appellant entered a default judgment against Dankovich on February 12, 1997. Thereafter, a judgment in the amount of $1,000,000.00 was entered on April 10, 1997. In pursuit of his recovery, Appellant filed a writ of execution against both Dankovich and Security Indemnity, as garnishee. Appellant also served garnishment interrogatories upon Security Indemnity.[2]

On May 15, 1997, Security Indemnity filed a notice of removal, removing the garnishment action to the United States District Court for the Western District of Pennsylvania. While the action was pending in federal court, Security Indemnity filed a federal declaratory judgment action.

On July 8, 1997, the federal court remanded the matter back to state court, concluding that the garnishment action necessarily involved an inquiry into the nature of Dankovich's conduct, which lay at the center of the underlying state court litigation. By separate order on March 10, 1998, the federal court dismissed Security Indemnity's declaratory judgment action, noting that the issues in the declaratory judgment action were identical to the claims in the pending garnishment litigation.

---

[2] On June 9, 1997, Appellant and Dankovich entered into an assignment agreement whereby Appellant obtained Dankovich's cause of action against Security Indemnity in exchange for Appellant's agreement to forgo execution against Dankovich. Appellant then proceeded with a garnishment action against Security Indemnity only.

In July 2003, following remand to state court, Appellant's garnishment action, along with all other litigation pending against Security Indemnity, became subject to a stay order entered by the New Jersey Superior Court, which placed the insurer into "rehabilitation" status. On June 30, 2004, Security Indemnity was declared insolvent and all claimants pursuing relief against the insurer were required to file proof of claim forms with a liquidator. At this time, no court had ever reached the merits of Appellant's coverage claims against Security Indemnity.

Appellant timely filed his proof of claim form with the liquidator for Security Indemnity on or around October 8, 2004. Subsequently, in April 2007, Appellant's former counsel wrote PPCIGA's counsel regarding the status of Appellant's liquidation claim.[3] Counsel for PPCIGA responded that she represented PPCIGA, not Security Indemnity. PPCIGA's counsel further informed counsel for Appellant that PPCIGA did not have a claim established for Appellant and that Appellant should work with the liquidator for Security Indemnity. Following this exchange, Appellant's counsel took no further action in pursuing legal redress against PPCIGA.

---

[3] PPCIGA is a guaranty association comprised of every insurer which has authority to write property and casualty policies within Pennsylvania. 40 P.S. § 991.1803(a). The purpose of this association is to provide "a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. § 991.1801(1).

Eventually, on March 11, 2011, Appellant received notice of a final claim determination from Security Indemnity's liquidator. The notice advised Appellant that payment of his claim was "priority 4" and indicated that his claim "is being adjudicated by [PPCIGA] pursuant to statute." Although the notice set forth a mechanism through which to appeal the liquidator's determination, Appellant took no further legal action against the liquidator. On September 26, 2012, PPCIGA denied coverage of Appellant's claim.

Appellant initiated this declaratory judgment action against PPCIGA by filing a complaint on August 15, 2013. An amended complaint was filed October 25, 2013. Appellant alleged that PPCIGA is obligated to pay him $1,000,000.00 based upon the default judgment obtained against Dankovich on April 10, 1997. PPCIGA answered Appellant's complaint on December 23, 2013.

After the parties had an opportunity to conduct discovery, Appellant moved for summary judgment on March 5, 2015. PPCIGA filed its own motion for summary judgment on May 5, 2015. The trial court convened oral argument on June 16, 2015. Thereafter, the trial court granted summary judgment in favor of PPCIGA on July 9, 2015. The court denied Appellant's motion by separate order entered on the same day.

The trial court offered three distinct grounds for its rulings on the parties' motions. Relevant to the statute of limitations, the court reasoned

that Appellant's cause of action against PPCIGA accrued no earlier than September 24, 1996, the date of Security Indemnity's coverage denial letter with respect to Uropa, and no later than April 25, 2007, the date counsel for PPCIGA sent a letter to Appellant's former counsel advising that the association had not established a claim in this matter. Since Appellant did not file his complaint until August 15, 2013, the trial court concluded that the action is barred by the applicable limitations period. *See* Trial Court Opinion, 11/13/15, at 6.

Turning to the Pennsylvania Property and Casualty Insurance Claim Act, 40 P.S. § 991.1801, *et seq*. (the Act), the trial court also determined that Appellant did not possess a covered claim.[4] Several findings

---

[4] The Act defines a covered claim as follows:

**Covered claim.**

(1) An unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article and:

(i) the claimant or insured is a resident of this Commonwealth at the time of the insured event: Provided, That for entities other than an individual, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event; or

(ii) the property from which the claim arises is permanently located in this Commonwealth.

*(Footnote Continued Next Page)*

contributed to this conclusion. First, the court found that Appellant was not an insured under the Security Indemnity policy. Additionally, although Appellant filed a lawsuit against Dankovich to recover for injuries, the court reasoned that Appellant could not be considered a claimant under the Act because Security Indemnity denied coverage to Dankovich on January 7, 1997. Hence, after noting that "[n]either Dankovich nor [Appellant] pursued any other legal action or claim against Security Indemnity[,]" the court held that, "at the time of Security Indemnity's insolvency, June 30, 2004, Dankovich was not an insured under the Security Indemnity policy and [Appellant's] unpaid claim [was] not within the coverage of an insolvent insure[r]'s policy." *Id.* at 4 (internal quotations omitted).

_____ *(Footnote Continued)* _____

> (2) The term shall not include any amount awarded as punitive or exemplary damages; sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise.

> (3) The term shall not include any first-party claim by an insured whose net worth exceeds twenty-five million ($25,000,000) dollars on December 31 of the year prior to the year in which the insurer becomes an insolvent insurer: Provided, That an insured's net worth on that date shall be deemed to include the aggregate net worth of the insured and all of its subsidiaries as calculated on a consolidated basis.

40 P.S. § 991.1802 (definitions).

Separate and apart from the covered claim and statute of limitations issues, the trial court concluded that issues of fact surrounding the circumstances of the shooting and Appellant's acquisition of a default judgment against Dankovich would preclude entry of summary judgment in Appellant's favor. *Id*. at 4. This timely appeal followed.[5]

Appellant raises two issues for our consideration in this appeal.

> Whether Appellant's declaratory judgment action against PPCIGA [is] barred by the statute of limitations when (a) it was filed within four years of PPCIGA's denial of his claim, (b) it was filed within four years of Appellant's receipt of a notice of final claim determination from the liquidator of the insolvent insurance company [(Security Indemnity)], (c) Appellant was actively litigating a garnishment action against the insurance company[, Security Indemnity,] when it became insolvent, and (d) [Appellant] timely filed a proof of claim with the liquidator of the insolvent company to preserve this claim?

> Whether an individual has a covered claim pursuant to the Pennsylvania Property and Casualty Insurance Guaranty Association Act, 40 P.S. § 1801, *et seq*.[,] when he has a valid claim under a Pennsylvania insurance policy, obtained a judgment against an insured and thereafter filed a writ of execution and garnishment action against the insurer, and thereafter filed a proof of claim when the insurer became insolvent?

Appellant's Brief at 4.

---

[5] Appellant filed his notice of appeal on August 3, 2015. The trial court, by order entered pursuant to Pa.R.A.P. 1925(b) on August 11, 2015, directed Appellant to file a concise statement of errors complained of on appeal. Appellant timely complied by filing his concise statement on August 28, 2015. The trial court issued its Rule 1925(a) opinion on November 13, 2015.

The standard of review applicable to an order granting summary judgment is well settled.

> Summary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). In considering a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. **Fine v. Checcio**, 870 A.2d 850, 857 (Pa. 2005). When reviewing whether there are genuine issues of material fact, this Court's standard of review is *de novo*; we need not defer to determinations made by lower courts; and our scope of review is plenary. **Id**. at n.3.

**Gleason v. Borough of Moosic**, 15 A.3d 479, 484 (Pa. 2011) (parallel citations omitted).

In his first issue, Appellant claims that the trial court erred in concluding that the applicable limitations period barred his declaratory judgment action against PPCIGA. Specifically, Appellant challenges the trial court's determination that the April 25, 2007 letter from counsel for PPCIGA, advising Appellant and his counsel that the association did not have a claim established for this matter, triggered the four-year limitations period relating to Appellant's declaratory judgment action. Appellant argues instead that his declaratory judgment claim did not accrue until March 11, 2011, when he received the notice of final claim determination from Security Indemnity's New Jersey liquidator, or, alternatively, September 26, 2012, when he received notice from PPCIGA that he would not receive payment on his claim. PPCIGA defends the trial court's ruling, asserting that Appellant knew

all he needed to know in order to file a declaratory judgment action after he learned in 2007 that PPCIGA had not set up a claim to administer this matter. PPCIGA's position is that subsequent communications did nothing to alter or enhance Appellant's understanding that his claim would be handled by the association.

The principles that guide our analysis of what triggers the limitations period in a declaratory judgment action were recently discussed at length by an *en banc* panel of this Court in **Selective Way Ins. Co. v. Hospitality Group Services, Inc.**, 119 A.3d 1035 (Pa. 2015) (*en banc*). In **Selective Way**, we said:

> Although not required by law, a party may initiate a declaratory judgment action for the court to make a determination of coverage of a claimed injury under an insurance policy. **Aetna Cas. & Sur. Co. [v. Roe**, 650 A.2d 94, 99 (Pa. Super. 1994)]. "Declaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status or other relation." **Wagner v. Apollo Gas Co.**, 582 A.2d 364, 365 (Pa. Super. 1990) (citation omitted). The Declaratory Judgments Act[, 42 Pa.C.S.A. § 7531-7541,] empowers courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed," and these declarations "have the force and effect of a final judgment or decree." 42 Pa.C.S.A. § 7532. To bring a declaratory judgment action,
>
>> there must exist an actual controversy[, as] [d]eclaratory judgment is not appropriate to determine rights in anticipation of events which may never occur. It is an appropriate remedy only where a case presents antagonistic claims indicating imminent and inevitable litigation.
>
> **Bromwell v. Michigan Mut. Ins. Co.**, 716 A.2d 667, 670 (Pa. Super. 1998).

This Court has held that the four-year catchall statute of limitations is appropriate for declaratory judgment actions regarding the parties' rights and duties under a contract. **Wagner**, 582 A.2d at 366; **see** 42 Pa.C.S.A. § 5525(a)(8) (stating that a four-year statute of limitations applies to "[a]n action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter").[6]

The statute of limitations for a cause of action begins to run "from the time the cause of action accrued." 42 Pa.C.S.A. § 5502(a). "In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." **Fine v. Checcio**, 870 A.2d 850, 857 (Pa. 2005). It is clear that the legislature intended for declaratory judgments to be subject to a limitations period. **See** 42 Pa.C.S.A. 7538(a) (stating that "[j]udicial relief based on a declaratory judgment or decree may be granted whenever necessary or proper subject to Chapter 55 (relating to limitation of time)"). [The Legislature] provided no indication, however, as to the appropriate limitations period for a declaratory judgment action.

Pennsylvania case law on this issue is scarce and provides little guidance in the matter before us. Although this Court in **Wagner** held that the four-year catchall statute of limitations contained in section 5525(a)(8) applies to declaratory judgment actions concerning the parties' rights and duties under a written contract, the **Wagner** Court did not specify when the statute of limitations for such an action begins to run. In **Wagner**, both parties allegedly breached the written contract concerning the Wagners' provision of natural gas to Apollo—Apollo in 1974 and 1975, when it failed to pay price increases, and the Wagners in 1975, when they ceased providing gas to Apollo, and again in

---

[6] We acknowledge that Appellant brought this declaratory judgment action seeking a judicial determination as to PPCIGA's obligations under the Act, not a contract of insurance. The Act, however, defines PPCIGA's obligations in terms of the language set forth in the policy of the insolvent insurer. Thus, as neither the parties nor the trial court contends that the four-year catchall statute of limitations found in § 5525(a)(8) is improper, we shall assume that this provision applies in the context of this dispute.

1981, when they removed their gas meter. *Wagner*, 582 A.2d at 365. The parties began to correspond with one another in or around March of 1985 about resuming the sale of gas, but could not agree on the terms. *Id.* at 366–367. The *Wagner* Court did not find any of the aforementioned alleged breaches or the disagreement as to the terms of the contract triggered the limitations period for a declaratory judgment action, as it found "no indication that a controversy arose as to the continued validity of the contract" at any of those times. *Id.* at 367. Rather, without specifying a date or the triggering event, the Court found that "the present controversy ripened into a cause of action for declaratory judgment in 1987," which was the same year the Wagners filed their declaratory judgment action. *Id.*

The only other Pennsylvania appellate case to discuss (albeit briefly and in a footnote) the triggering event for the running of the statute of limitations for the filing of a declaratory judgment action is *Zourelias v. Erie Ins. Grp.*, 691 A.2d 963 (Pa. Super. 1997). In that case, Zourelias suffered injuries in a car accident that occurred in 1986. *Id.* at 964. The court dismissed his personal injury suit because his attorney filed it beyond the applicable limitations period. *Id.* Zourelias then brought a legal malpractice action against his former attorney and obtained a judgment of $100,000 for the attorney's professional negligence in 1995, but the attorney did not have insurance coverage for professional negligence and had no known assets. *Id.* Zourelias contacted his automobile insurance carrier that insur[ed] him at the time of the accident seeking $50,000.00 in underinsured or $100,000.00 in uninsured motorist benefits. *Id.* The insurance company denied coverage. *Id.* On May 31, 1996, Zourelias commenced a declaratory judgment action asserting entitlement to underinsured or uninsured motorist benefits from the insurance company. *Id.* The insurance company contended that the statute of limitations had expired, but this Court disagreed. We stated that because a cause of action for a declaratory judgment does not accrue until there is an actual controversy, the statute of limitations did not begin to run in that case until the insurance company denied the insured's request for coverage. *Id.* at 964 n.2. We therefore found timely the declaratory judgment action filed within four years of the insurance company denying coverage. *Id.*

In the absence of a rule promulgated by our Supreme Court or a statute stating otherwise, the statute of limitations commences

to run, in relevant part, when "the cause of action accrued." 42 Pa.C.S.A. § 5502(a–b). In light of this clear, unambiguous directive by the Pennsylvania Legislature, we are unable to adopt an alternative trigger for the commencement of the statute of limitations. *See* 1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

*Selective Way*, 119 A.3d at 1046-1048 (parallel citations omitted).

We distill several relevant principles from our decision in *Selective Way*. First, declaratory judgment actions are subject to a four-year limitations period under Pennsylvania law. Second, this limitations period begins to run when a cause of action accrues. Third, a cause of action for declaratory judgment accrues when an actual controversy exists and an actual controversy exists only where a case presents clearly antagonistic positions or claims indicating imminent and inevitable litigation.

Applying these principles to the facts before us, we disagree with the trial court's conclusion that the statute of limitations for filing Appellant's declaratory judgment action necessarily began to run on April 25, 2007, when counsel for PPCIGA advised Appellant that the association did not have a claim established for this matter. We quote that letter at length.

> [Counsel for PPCIGA is] in receipt of [Appellant's counsel's] letter dated April 18, 2007, concerning your telephone call with [Security Indemnity's liquidator]. I wanted to advise you that you are under a misconception that this firm represents [Security Indemnity] in this matter. On the contrary, we were asked to contact you concerning this matter on behalf of [PPCIGA]. As you know, Security Indemnity has been declared insolvent and has been placed in liquidation. There has been a [s]tay on all cases being prosecuted against Security Indemnity. I believe that your letter was forwarded by the liquidator to

- 13 -

> [PPCIGA] for review. At that time, [PPCIGA] passed along information to us and we contacted you to see if this case could be amicably resolved. At this time, I do not believe that any claim has been set up at [PPCIGA] to handle this matter. I suggest that you continue to correspond or speak with [Security Indemnity's liquidator] on this matter.

PPCIGA's Motion for Summary Judgment, 5/5/15, at Exhibit L.

At the outset, counsel's April 2007 letter falls far short of an outright denial of Appellant's claim. Instead, the letter asks about an "amicable resolution" of a potential claim between Appellant and PPCIGA at a time before the liquidator had finally determined that Security Indemnity possessed insufficient assets to resolve Appellant's contentions. Although the letter states that PPCIGA had no claim set up to handle this matter, this appears to be because PPCIGA was still reviewing its position on Appellant's claim, not because PPCIGA was determined to deny Appellant's claim. In fact, the letter encourages continued settlement communications between the liquidator and counsel for Appellant. By itself, then, we are not convinced that PPCIGA's 2007 letter demonstrates an actual controversy, or shows such contrary and antagonistic positions, that Appellant should have anticipated imminent or inevitable litigation against the association. As such, the trial court erred in concluding that the April 25, 2007 letter from

- 14 -

PPCIGA's counsel triggered the limitations period on Appellant's declaratory judgment action.[7]

Appellant's second issue asserts that he presented a covered claim within the meaning of the Act and that the trial court erred in determining otherwise. We begin our analysis by reviewing the determinations made by the trial court. As we stated above, the court found that Appellant was not an insured under the Security Indemnity policy. Moreover, despite Appellant's lawsuit against Dankovich, the trial court determined that Appellant could not be deemed a claimant under the Act because Security Indemnity denied coverage to Dankovich on January 7, 1997. Thus, after observing that neither Dankovich nor Appellant pursued other legal remedies against Security Indemnity, the court held that at the time of the insurer's insolvency on June 30, 2004, Dankovich was not an insured under the Security Indemnity policy and Appellant's unpaid claim did not fall within the coverage of an insolvent insurer's policy.

Appellant disputes these determinations. He claims that the Act permits third-party claims such as his which fall within the coverage terms of

---

[7] As we have concluded that the April 25, 2007 letter from counsel for PPCIGA did not trigger the four-year limitations period on Appellant's declaratory judgment action, we need not consider whether the March 11, 2011 final determination from the liquidator, or whether PPCIGA's denial of Appellant's claim on September 26, 2012, triggered the limitations period since Appellant filed the present action within four years of both of these communications.

an insolvent insurer's policy. In support of his contentions, Appellant argues that he sustained injuries that resulted from the alleged negligence of Dankovich, who was an employee of the insured (Uropa) and who was acting within the scope of his employment. Appellant further claims that Security Indemnity's denial of coverage does not bar his declaratory judgment action against the guaranty association where the insurer became insolvent before coverage issues could be judicially resolved in the context of ongoing garnishment proceedings.

PPCIGA defends the trial court's ruling. The association maintains that its obligations under the Act extend only to payment of "covered claims" that exist prior to an insurer's insolvency or that arise 30 days after the determination of insolvency. PPCIGA's Brief at 19-20, *citing* 40 P.S. 991.1803(b)(1)(i). Because the Act applies only where a covered claim exists at a defined point in time, PPCIGA argues that Dankovich cannot be an insured since Security Indemnity denied coverage on September 24, 1996 and January 7, 1997. PPCIGA also reasons that because Dankovich was not an insured, Appellant cannot be a third-party claimant because his loss was not caused by an insured who was entitled to seek compensation from the insurer, but for its insolvency. For related reasons, PPCIGA contends that the trial court correctly determined that Appellant did not possess a covered, but unpaid, claim during the period required by the Act.

PPCIGA thus claims that the trial court's determinations should not be overturned.

This case compels us to consider whether, under the Act, a pre-insolvency denial of coverage defeats, as a matter of law, the existence of a covered claim against PPCIGA where insolvency prematurely terminates coverage litigation against a defunct insurer. As this issue involves statutory construction, we apply the following principles.

> Where reviewing a claim that raises an issue of statutory construction, our standard of review is plenary. We recognize:
>
>> Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S.1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, inter alia: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c)[.]
>>
>> Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states

> that, in ascertaining legislative intent, courts may apply, inter alia, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Wilson*, 111 A.3d 747, 751 (Pa. Super. 2015) (citation omitted), *appeal denied*, 128 A.3d 221 (Pa. 2015).

The rules governing PPCIGA's administration and operation are codified at 40 P.S. § 991.1801, *et seq*. The legislature adopted the Act "t[]o provide a means for the payment of covered claims under certain property and casualty policies . . . and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. § 991.1801.

PPCIGA is "a statutorily unincorporated association vested with remedial obligations in circumstances where licensed property and casualty insurers are deemed insolvent." *Bell v. Slezak*, 812 A.2d 566, 570 (Pa. 2002). To resolve claims brought against insolvent insurers, PPCIGA collects monies from all insurance companies that write property and casualty insurance in the Commonwealth. *See* 40 P.S. § 991.1803(b)(3); *Bell* 812 A.2d at 571.

PPCIGA is "obligated to pay covered claims existing prior to the determination of the insolvency, arising within thirty (30) days after the

determination of insolvency or before the policy expiration if less than thirty (30) days after the determination of insolvency or before the insured replaces the policy or causes its cancellation if he does so within thirty (30) days of the determination." 40 P.S. § 991.1803(b)(1)(i).

The Act defines the term "covered claim," in relevant part, as "[a]n unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage [of the insolvent insurer's policy]." 40 P.S. § 991.1802(1). A claimant need not be an insured under the policy as both first-party and third-party claimants may possess "covered claims" for purposes of the Act. **Bell**, 812 A.2d at 572.

Applying the foregoing principles, we conclude that Security Indemnity's 1997 denial of coverage – in the absence of judicial confirmation – does not defeat all pretense to a covered claim under the Act, as a matter of law. Giving controlling effect to an insurer's denial of coverage, without judicial affirmation, is contrary to the plain language of the Act. PPCIGA and the trial court are correct that § 991.1803(b)(1)(i) requires the existence of a "covered claim" at the time of insolvency, or arising within 30 days of that date. Nonetheless, the Act defines the term "covered claim" to be a claim "arising under the policy" which is asserted "by a claimant." This language imposes two essential requirements. First, the "claimant" must be one who is either an insured or a third-party who possesses a claim against an insured. Second, the claim must "arise under

the policy," an inquiry that focuses attention upon the event or incident that leads to a coverage request and the application of the policy terms to that event or incident. To attain legally conclusive effect, this inquiry is ordinarily performed by an impartial jurist, not an interested party such as an insurer. There simply is no provision in the definition of "covered claim" that confers conclusive or controlling effect upon an insurer's acceptance of coverage prior to insolvency. If the legislature had intended to define the phrase "covered claim" in terms of coverages accepted by an insurer, it could have done so directly, but it did not. Thus, the plain terms of the provision lead us to conclude that a claimant may seek a judicial determination as to his rights against PPCIGA (much as he would do against an insurer) where insolvency terminates proceedings aimed at obtaining judicial confirmation of the insurer's coverage obligations.[8]

_____

[8] The language employed in § 991.1803(b)(1)(i) offers further support for our conclusion. Section 991.1803(b)(1)(i) extends PPCIGA's obligation to "covered claims" that "arise within" 30 days of insolvency. Here again, the language applies PPCIGA's obligations to claims asserted by a claimant that embrace events that occur within 30 days of insolvency and which fall within the scope of coverage under the policy. There is no requirement, as PPCIGA's position seems to suggest, that the existence of a covered claim also depends upon the now-defunct insurer accepting coverage within 30 days of its insolvency. Indeed, it strikes us, at best, as counterintuitive to confer conclusive effect upon the coverage determinations of an insurer that recently was declared insolvent.

Here, Appellant obtained a default judgment against Dankovich[9] and instituted collection proceedings, including service of garnishment interrogatories upon Select Indemnity. The rules of civil procedure allow a garnishee to assert "any defense or counterclaim which the garnishee could assert against the defendant if sued by the defendant." Pa.R.C.P. 3145(b)(2). Hence, we have said that garnishment interrogatories represent a valid means of determining coverage issues against an insurer, as the insurer has the right, within such proceedings, to raises defenses to coverage. *See Bianco v. Concepts 100, Inc.*, 436 A.2d 206, 208-209 (Pa. Super. 1981). Security Indemnity's 2004 insolvency terminated the pending garnishment proceedings without judicial resolution of critical coverage issues. Because of this and because Pennsylvania law includes third-party claimants such as Appellant within the definition of "claimant" under the Act, we conclude that Appellant may proceed in his declaratory judgment action against PPCIGA since Security Indemnity's prior denial of coverage, standing alone, did not defeat Appellant's right to assert a covered claim, as a matter of law.

---

[9] Appellant alleged that Dankovich was an insured under the policy since he was an employee of Uropa who was acting within the scope of his employment on July 4, 1996. We pass no judgment on the circumstances or manner by which Appellant obtained his default judgment against Dankovich, as that issue is not before us.

We would be remiss, however, if we did not emphasize the precise scope of our rulings. As to Appellant's first issue, we conclude that PPCIGA's 2004 letter did not establish an actual controversy and, thus, did not trigger the limitations period on Appellant declaratory judgment action. As to Appellant's second issue, we hold only that an insurer's pre-insolvency denial of coverage, standing alone and without judicial confirmation, does not preclude, as a matter of law, a claimant from asserting a potentially covered claim under the Act. We by no means suggest, however, that summary judgment is unavailable in all similar instances. Summary judgment may be awarded in favor of PPCIGA where there has been a pre-insolvency denial by the insurer, and no judicial confirmation, so long as the summary judgment motion asserts, and the trial court finds, that reasonable minds could not differ that policy exclusions or other defenses demonstrate that coverage was unavailable as a matter of law.[10] Here, however, the trial court stated that genuine issues of fact as to the shooting and circumstances surrounding Appellant's default judgment precluded the entry of judgment in his favor. *See* Trial Court Opinion, 11/13/15, at 4. Since reasonable minds could differ as to the application of coverage exclusions and other defenses, summary judgment was inappropriate in this matter.

_____

[10] Of course, where a pre-insolvency denial has attained judicial confirmation, that decision would be entitled to preclusive effect under the doctrines of collateral estoppel or *res judicata*.

- 22 -

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2017