J-S11045-17

2017 PA Super 121

| | | |
|---|---|---|
| JOSEPH M. GROSS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NOVA CHEMICALS SERVICES, INC. | : | No. 1408 WDA 2016 |

Appeal from the Order August 17, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD16-008023

BEFORE:   OLSON, RANSOM, JJ., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 24, 2017**

Joseph M. Gross ("Appellant") appeals from the order entered in the Court of Common Pleas of Allegheny County sustaining the preliminary objections filed by Nova Chemicals Services, Inc. ("Nova") and dismissing his complaint with prejudice. We affirm.

We note the following pertinent facts as averred in Appellant's complaint:

> 7.     Plaintiff [hereinafter "Appellant"] began employment with Defendant [hereinafter "Nova"] as an at-will employee in or about November 2004 and continued in such capacity of employment in the position of Chief Pilot until May 13, 2014.
>
> 8.     Appellant's final base salary with Nova was approximately $321,500 per year.

_____

[*] Former Justice specially assigned to the Superior Court.

9. Appellant worked with a flight crew in his capacity as Chief Pilot; this flight crew included, among others, two other pilots.

10. The Federal Aviation Administration required two pilots for the operation of Nova's aircraft.

11. As Chief Pilot, Appellant was primarily responsible for the operation of the aircraft.

12. Under [the Federal Aviation Act (FAA)], 14 CFR 91.3(a), the pilot in command is "directly responsible for, and is the final authority as to the operation of the aircraft."

13. Responsibility of the aircraft includes the safety of the aircraft and its passengers; such safety depends upon the ability of the pilot in command to properly communicate with the flight crew, particularly a co-pilot.

14. If a pilot does not believe that he can responsibly operate the aircraft, he has a duty to abstain from operation of the aircraft.

15. In or around January 2014, an employee of Nova began making frivolous and anonymous complaints against Appellant.

16. Nova investigated each complaint and found all to be without merit.

17. On or about March 5, 2014, employee and co-pilot Gale Truitt and Appellant were operating a flight which, among other passengers, included a Vice-President of Human Resources.

18. During the trip, Mr. Truitt approached the VP to ask why no action had been taken against Appellant, revealing to all parties that Mr. Truitt was the actor making the frivolous complaints against Appellant.

19. After the March 5, 2014, trip, Appellant spoke with his Human Resources contact, Denise McBride, regarding the situation with Mr. Truitt and asked if any action would be taken regarding the situation.

20. Ms. McBride replied that nothing would be done, and that specifically Appellant was not to approach Mr. Truitt, as Nova

feared an age discrimination suit if Nova took any action towards Mr. Truitt.

21. The situation between Mr. Truitt and Appellant became increasingly difficult. Mr. Truitt's behavior towards Appellant caused a breakdown in communication during flights.

22. This breakdown in communication, because of Nova employee's behavior, led Appellant to become increasingly concerned for in-flight safety.

23. Appellant expressed to Ms. McBride the communication difficulties that were experienced and the concerns he had regarding safety.

24. Ms. McBride asked Appellant if he could continue to fly with Mr. Truitt as a crew member; Appellant stated that for safety, he should not be paired with Mr. Truitt.

25. Ms. McBride stated that she understood and they agreed that this was a temporary solution.

26. Nevertheless, on April 7, 2014, Appellant and Mr. Truitt were forced to fly together.

27. During the trip, Mr. Truitt refused to communicate effectively with Appellant. Appellant in his assessment, as Chief Pilot, believed that this lack of communication presented a safety hazard and prevented Appellant from executing his duty to be the final authority of the aircraft.

28. Appellant made several inquiries to Ms. McBride following this April 7, 2014, flight to receive an update on the situation with Mr. Truitt and request a permanent solution; Appellant also reasserted his concerns regarding communication and safety.

29. Appellant never received any information regarding a permanent solution or an update on the matter.

30. During this time Appellant also had a conversation with his supervisor, Peter Masterman, regarding what could be done to remedy the unsafe conditions.

31.    Mr. Masterman's response was "I had hoped that if I ignored this issue long enough it would go away."

32.    Appellant, in his assessment as Chief Pilot, determined that going forward he could no longer execute his duties under the FAA  with the current conditions, as Nova continued to refuse to address the matter.

33.    In order to comply with his duties under the FAA, including to have the final authority over the operation of the aircraft, Appellant's employment wrongfully terminated on May 13, 2014.

Appellant's Complaint, filed 6/13/15, at 4-6.

In his Complaint, Appellant charged Nova with one count of wrongful termination in the nature of constructive termination.  Specifically, the Complaint averred that Nova's refusal "to address communication issues led to unsafe flight conditions and rendered [him] unable to comply with his duties under the FAA to be the final authority on the aircraft."  *Id*. at ¶ 37. "Compliance with a duty under FAA regulations and in-flight safety are clearly public policy mandates in the best interest of the public health and safety[,]" the Complaint continued.  *Id*. at ¶ 42.

Additionally, Appellant posited that Nova's refusal to approach Truitt because Truitt was eligible to file an age-based discrimination suit amounted to disparate treatment that "contravene[ed] public policy legislation, on both a state and federal level, which prohibits an employer from treating an employee differently on the basis of age."  *Id.* at ¶ 40.  This discriminatory action against Appellant, he claimed, further prevented him from performing his duty to be the final authority on the aircraft under the FAA undermining public safety concerns regarding in-flight safety.  *Id*. at ¶ 41.

Nova filed Preliminary Objections to Appellant's Complaint on July 7, 2016, in the nature of a demurrer. Appellant filed a Brief in Opposition on August 10, 2016. After entertaining oral argument, the trial court sustained Nova's Preliminary Objections and dismissed Appellant's Complaint. This timely appeal followed.

Appellant presents the following questions for our review:

I.  **DID THE HONORABLE TRIAL COURT COMMIT AN ERROR OR ABUSE OF DISCRETION BY GRANTING THE CLAIM OF A DEMURER [SIC] AND DISMISSING THE CASE WHEN THERE WERE THEORIES OF LAW AND FACT UNDER WHICH THE APPELLANT COULD HAVE RECOVERED?**

II.  **DID THE HONORABLE TRIAL COURT ERR OR ABUSE ITS DISCRETION BY MAKING FACTUAL DETERMINATIONS IN DECIDING TO GRANT THE CLAIM OF A DEMURER AND DISMISS THE CASE?**

Appellant's brief at 5-6.[1]

Initially, we set forth our standard of review:

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably

_____

[1] We note that Appellant has not challenged the trial court's dismissal of his age-discrimination claim.

deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Freundlich & Littman, LLC v. Feierstein*, 2017 PA Super 40 (Feb. 23, 2017) (quoting *Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012) (internal citations omitted)).

This Court has explained the requirements of a wrongful termination claim raised by an at-will employee:

> [A]n action in the Court of Common Pleas is appropriate for a wrongful termination claim that is based on a violation of public policy. The Pennsylvania Supreme Court held that an employee has a common law action for wrongful discharge where there is a clear violation of public policy in the Commonwealth. *McLaughlin v. Gastrointestinal Specialists, Inc.*, [561 Pa. 307], 750 A.2d 283 (Pa. 2000). In *McLaughlin*, the court discussed the types of cases where an employee could file a claim for wrongful discharge. The court noted "that the exception to the employment at-will rule should be applied in only the narrowest of circumstances.
>
> \*\*\*
>
> The [*McLaughlin* C]ourt also observed that, "as a general proposition, the presumption of all non-contractual employment relations is that it is *at-will* and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *Id.*

*Roman v. McGuire Mem'l*, 127 A.3d 26, 31–32 (Pa.Super. 2015).

In **Weaver v. Harpster**, 975 A.2d 555, 563 (Pa. 2009), the Pennsylvania Supreme Court expounded on the role of our courts in declaring public policy in this Commonwealth:

> In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted. **Mamlin v. Genoe (City of Philadelphia Police Beneficiary Ass'n)**, 340 Pa. 320, 17 A.2d 407, 409 (1941). Rather, it is for the legislature to formulate the public policies of the Commonwealth. The right of a court to declare what is or is not in accord with public policy exists "only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." **Mamlin**, 17 A.2d at 409. Only in the clearest of cases may a court make public policy the basis of its decision. **Id.** To determine the public policy of the Commonwealth, we examine the precedent within Pennsylvania, looking to our own Constitution, court decisions, and statutes promulgated by our legislature. **McLaughlin**, 750 A.2d at 288; **Hall v. Amica Mutual Ins. Co.**, 538 Pa. 337, 648 A.2d 755 (1994); **Lurie v. Republican Alliance**, 412 Pa. 61, 192 A.2d 367 (1963); **Mamlin**, 340 Pa. 320, 17 A.2d 407.

**Weaver**, 975 A.2d 555, 563 (2009).

Appellant argues that his Complaint pled facts that, if believed, proved Nova constructively discharged him for reasons violating Pennsylvania public policy. He points to his averment that Nova jeopardized the safety of the aircraft and passengers by requiring Appellant to fly with a co-pilot who refused to communicate properly with him. An employment decision that impedes the responsible operation of an aircraft in this Commonwealth implicates public safety under the FAA and, accordingly, violates Pennsylvania public policy manifest in legislation implementing the FAA, Appellant argues. Specifically, Appellant asserts in his brief that the

Pennsylvania General Assembly has effectively declared a chief pilot's responsibilities under FAA rules to be public policy of this Commonwealth though the enactment of 74 Pa.C.S.A. 5301, which requires that all rules and regulations under this part shall be construed consistently with their federal counterparts found in the FAA.[2]

In the trial court's opinion, however, the "public policy exception" to the general prohibition against claims asserting wrongful at-will employment termination did not apply in the present case, as Appellant could point to no Pennsylvania public policy implicated by Nova's conduct. See Trial Court Opinion 10/27/16 at 3. Appellant, instead, relied strictly on a federal statutory duty—FAA regulation, 14 CFR 91.3(a), the pilot in command is "directly responsible for, and is the final authority as to the operation of the aircraft[,]" and in so doing failed to claim that public policy of Pennsylvania was at stake, the trial court determined.

In support of its decision, the trial court invoked the rationale expressed in our Supreme Court's decision in *McLaughlin*. In *McLaughlin*, the plaintiff/appellant claimed her employer discharged her in retaliation for bringing an OSHA[3]-based safety complaint—substantiated with a laboratory test result confirming that an office air sample contained excessive amounts

---

[2] 74 Pa.C.S.A. § 5301 is more fully described *infra.*

[3] Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651, 660(c).

of a toxic chemical stored in the office—to her employer's attention. Despite the safety implications raised in her underlying complaint, the Court affirmed the Superior Court order upholding the sustaining of preliminary objections and the dismissal of the action because the complaint failed to point to any *Pennsylvania* public policy implicated by her employer's alleged violation of OSHA. The Court reasoned:

> We believe that it is a mistake to baldly point to a federal statute or administrative regulation and, without more, proclaim this as the public policy of the Commonwealth, such that every violation of any federal code, or statute becomes the basis for seeking a common law remedy against an employer.
>
> As our previous jurisprudence has shown, this Court has steadfastly resisted any attempt to weaken the presumption of at-will employment in this Commonwealth. If it becomes the law that an employee may bring a wrongful discharge claim pursuant to the "public policy" exception to the at-will employment doctrine merely by restating a private cause of action for the violation of some federal regulation, the exception would soon swallow the rule. While, of course, this Commonwealth cannot enact laws that contravene federal law, we are not required to override our longstanding policy regarding common law at-will employment and thus provide a common law remedy for wrongful discharge simply because Congress provides a federal statutory remedy to be brought in a federal forum. Rather, we hold that a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation.

*McLaughlin*, 750 A.2d at 290.

Here, Appellant argues his case is distinguishable from *McLaughlin* because his Complaint alluded to Section 5301, "Authority of department," which provides in relevant part that the Pennsylvania Department of

- 9 -

Transportation "shall promulgate and enforce regulations . . . and other laws relating to aviation, airports and air safety within this Commonwealth." 74 Pa.C.S.A. § 5301(a). The section further provides that "all rules and regulations promulgated by this department under authority of this part shall be consistent with and conform to the Federal statutes and regulations governing aeronautics." 74 Pa.C.S.A. § 5301(d). *See* Appellant's brief at 15.

Initially, we note that Appellant's Complaint invokes Section 5301 only in its "Jurisdiction and Venue" section, wherein it indicates that the trial court has personal jurisdiction over Nova under Section 5301 because Nova conducts business in the Commonwealth of Pennsylvania. *See* Complaint, at ¶ 4. The Complaint, otherwise, points only to the Federal Aviation Act, at 14 CFR 913(a), as the source of public policy requiring a chief pilot to be the final arbiter of safety issues arising during a flight. There is no averment or suggestion elsewhere that the public policy of this Commonwealth, through Section 5301 or any other means, mirrors this federal policy. In this regard, therefore, we discern no divergence between the present Complaint and the one in ***McLaughlin***.

Even if we concluded that Appellant's Complaint framed Section 5301 as a source of Pennsylvania public policy implementing 14 CFR 913(a), we would reject this position as a misstatement of the law. To the extent that our decision in this regard involves statutory construction of Section 5301, we apply the following principles:

Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S.1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c)[.]

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

***Green v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n***, --- A.3d ----,

2017 PA Super 73 (Mar. 21, 2017) (quoting ***Commonwealth v. Wilson***,

111 A.3d 747, 751 (Pa.Super. 2015) (citation omitted)).

- 11 -

Section 5301 of Title 74, Part III, "Aviation," plainly states only that all rules and regulations promulgated by the Department of Transportation relating to aviation "shall be consistent with and conform to the Federal statutes and regulations governing aeronautics." 74 Pa.C.S.A. § 5301(d). Appellant, however, has identified no such promulgated rule in this Commonwealth addressing the subject matter or duty expressed in 14 CFR 913(a).

The General Assembly could have written Section 5301 to provide that in the absence of a Pennsylvania legislative or regulatory counterpart to any FAA rule or regulation, the FAA rule or regulation controls. Section 5301 does not say this, however. Instead, it confines application of the Section 5301(d) conformity clause to those DOT aviation rules and regulations actually promulgated. We construe this language, therefore, to establish that statutorily-created public policy pertaining to aviation may derive only from the promulgated rules and regulations of this Commonwealth.

Precedent confines the scope of "public policy" of the Commonwealth in this context to "*our own* Constitution, court decisions, and statutes promulgated by *our* legislature." **Weaver**, **supra** (emphasis added). The federal duty expressed in 14 CFR 913(a) does not reflect a rule or regulation promulgated by the Department of Transportation, nor has our General Assembly enacted a law requiring DOT to promulgate a discrete rule or regulation that requires conformity with 14 CFR 913(a). Accordingly, we

discern no public policy of this Commonwealth within the FAA statutory duty cited in Appellant's Complaint.

Order is Affirmed.[4]

Judge Ransom joins the Opinion.

Judge Olson concurs in the result.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2017

---

[4] Given our determination that Appellant failed, as a matter of law, to implicate a public policy exception to the prohibition against a wrongful termination claim in the at-will employment context, we need not address his second issue charging the trial court with making factual determinations not properly resolved at preliminary objections.