J-A26008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TIMOTHY G. LONG | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DOUGLAS K. DENLINGER AND DAVID ISAAC LUTZ | |
| Appellees | No. 416 MDA 2017 |

Appeal from the Order Entered February 17, 2017
In the Court of Common Pleas of Franklin County
Civil Division at No(s): 2015-01435

BEFORE:  BOWES, OLSON, AND RANSOM, JJ.

MEMORANDUM BY BOWES, J.:                **FILED FEBRUARY 14, 2018**

Timothy G. Long appeals from the February 17, 2017 order denying his motion to deny recommendations of the receiver, and the January 6, 2016 order sustaining the preliminary objections in the nature of a demurrer of Appellees Douglas K. Denlinger and David Isaac Lutz.  We conclude that the averments contained in Mr. Long's amended complaint sufficiently alleged a cause of action for breach of contract to survive a demurrer.  Accordingly, we reverse and remand for further proceedings.

Based on a review of the record, the pertinent facts can be summarized as follows.  In 1990, Appellant founded a financial planning business, Keystone Financial Associates, LLC ("KFA").  In 2002, Mr. Denlinger joined Appellant's business.  In 2007, KFA employed Mr. Lutz, and

in 2009, the parties agreed to make Mr. Lutz a part owner of the business through a ten-year vested stock program garnering a one percent ownership interest per year. In 2013, the parties agreed to divide the business, with Appellant establishing a new company, and Mr. Denlinger and Mr. Lutz establishing a separate one. The parties negotiated an agreement for splitting KFA into distinct entities, which they memorialized in a Statement of Understanding ("SOU") signed by the parties on October 30, 2013.

The SOU provided the process by which the parties would dissolve KFA and create two separate financial planning businesses. The parties agreed that Appellant would receive 48.5% of the value of KFA in keeping with his ownership interest. Further, this distribution would be effectuated through a division of KFA's client base. Accordingly, the parties agreed to assign a value to each client, and allocate those clients to the newly-created entities in such a manner as to divide the company as nearly as possible to align with the agreed-upon ownership interests. The SOU purported to provide a value formula, which delineated base percentages and adjustments by which the parties would evaluate client value, without further explicating the method by which these values would be ascertained. It provided an adjustment period during which the parties would determine, adjust, and allocate clients in order to fulfill the purposes of the SOU.

Thereafter, the parties were unable to agree upon a distribution of the entire client list. The parties made numerous changes to this list through

2015. In February 2015, Appellant initiated an independent valuation of KFA's business. That independent analysis determined that the value of the client base allocated to Appellant fell significantly short of the 48.5% agreed upon in the SOU.

Based on the foregoing, Appellant commenced this action by filing a complaint on April 14, 2015, alleging breach of contract and calling for the dissolution of KFA and the appointment of a receiver to aid in that endeavor. Appellees filed preliminary objections, and in response, Appellant filed an amended complaint on August 20, 2015. Appellees again filed preliminary objections, and after a hearing on the matter, the court sustained Appellees' preliminary objections in the nature of a demurrer to Appellant's breach of contract claim. The trial court overruled the preliminary objections to Appellant's second count seeking dissolution of the partnership, but appointed a receiver to oversee that dissolution.

Subsequently, the receiver filed a memorandum adopting Appellees' proposed dissolution strategy, declined to provide an independent valuation of KFA's business, and determined that the valuation had been fairly and equitably negotiated. Appellant filed a motion to deny recommendations of the receiver, which, after a hearing, the trial court rejected. The court directed the receiver to proceed with the dissolution as set forth in the previously filed memorandum. Appellant filed a timely notice of appeal and complied with the court's order to file a Rule 1925(b) concise statement of

errors complained of on appeal. The court authored its Rule 1925(a) opinion, and this matter is now ready for our review.

Appellant raises two questions for our consideration:

I. Did the trial court commit reversible error in sustaining a demurrer on the grounds that the complaint seeks damages based on an independent valuation of the involved company?

II. Did the trial court err in approving the receiver's report without requiring the receiver to value the partnership assets as part of the dissolution process?

Appellant's brief at 6.

Appellant's first issue challenges the court's order sustaining Appellees' preliminary objections in the nature of a demurrer to his claim that Appellees breached the SOU. We are guided by the following principles:

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Gross v. Nova Chemicals Services, Inc.*, 161 A.3d 257, 261 (Pa.Super. 2017) (citation omitted). In order to sufficiently plead a count of breach of contract, Appellant must set forth facts that establish: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and, (3)

- 4 -

resultant damages. *McCabe v. Marywood University*, 166 A.3d 1257, 1262 (Pa.Super. 2017).

In sustaining Appellees' preliminary objections in the nature of a demurrer, the trial court noted that the only claim at issue was whether Appellees had breached the requirements of the SOU. In this vein, the trial court determined that, since the terms of the agreement controlled over any allegations levied in the complaint, the independent valuation that Appellant relied upon to prove that Appellees owed him damages for failing to provide him clients with a value equal to a 48.5% share of KFA was irrelevant. Rather, the court reasoned, the valuation procedure contained within the SOU controlled, and the agreement did not otherwise provide for an outside valuation. As such, the court concluded that Appellant could not rely upon an independent valuation to prove that Appellees had improperly valued KFA's client base. Thus, it dismissed Appellant's claim for breach of contract.

Appellant assails this reasoning, contending that the trial court erred in finding that the outside valuation could not be employed to prove Appellees breached the SOU. He maintains that, despite the supposed valuation process contained within the SOU, Appellees allotted him a lower percentage of business than contemplated by the agreement. Appellant asserts, "[w]hile the court may be correct that the contract established a method for the parties to attempt a fair division of clients, the contract contains no

language which makes that process unassailable by a court." Appellant's brief at 15. He concludes that, although the process was intended to guide the division of the business, where that process "results in an injustice, [he] must be allowed to prove that injustice with the help of some outside source." *Id*. at 16.

Upon review of the certified record, when considering all the material facts set forth in Appellant's amended complaint as true, we find that Appellant averred sufficient allegations to support a claim that Appellees breached the SOU. Significantly, Appellant alleged the following:

19. As determined by an independent firm who valued the book of business retained by [Appellees] and the book of business given to [Appellant], [Appellant's] book of business fell far short of being 48.5% of the value of the company.

20. Pursuant to said valuation, which is attached hereto as Exhibit D, [Appellant] is entitled to an adjusted value of $1,089,795.00.

21. According to the valuation, the clients [Appellant] received did not provide him with that value.

22. Despite demand, [Appellees] have failed and refused to compensate [Appellant] for the adjusted amount due to him as required by the [SOU].

Amended Complaint, 8/20/15, at ¶¶ 19-22. With regard to the process of dividing the client base, the SOU states, in pertinent part:

2. Process for dividing the client base between the new companies:

      a.   Develop a list of all accounts and polices and assign a value to each. Values and new company assignments have been completed effective August 1, 2013.

           . . . .

      c.   Adjustments to assignment will be updated to reflect client decisions as soon as possible so that the partners can monitor how the splits are impacted by client decisions. Efforts will be made to make adjustments to make the resulting splits to be as close as possible to the split targets as possible.

          i.   Through client assignments

          ii.   Through monetary payment if needed (see payment terms)

          iii.   Value formula for all existing client accounts and policies: Note: The below values represent "Base" Percentages.

| | Advisory | Mutual Funds | VA | Fixed Annuity | Direct | LTC | Life | Health | Medicare | Disability |
|---|---|---|---|---|---|---|---|---|---|---|
| multiplier | 1.76% | 0.44% | 0.44% | 0.22% | 0.86% | $ 100.00 | $ 25.00 | $ 125.00 | $ 125.00 | $ 85.00 |

          [iv.]   There are adjustments to the calculations (ie. Fee breakpoints, H&M relationship, personal accounts, etc.) Client/account specific multiplier adjustments are listed in columns AN titled "Adjustments for the amount of the fee we get" and AO titled "advisor % fee be charged to account" See Below: [providing chart with further adjustments].

Statement of Understanding, 10/30/13, at ¶ 2.

Finally, the independent valuation described and relied upon the "Market Approach" in arriving at its assessment of the value of Appellant's portion of the KFA business. Valuation Analysis and Estimate, 2/10/15, at 5. Although the SOU noted that the client base had been valued as of August 1, 2013, and outlined some metrics and adjustments upon which this value was determined, it did not specifically define the methodology by which that valuation was done. In this regard, the trial court made the following observation:

> This Court is unable to ascertain whether the two valuations (one by KFA and one by the independent firm) were obtained using the same method. If the Independent Valuation is returning a different value than KFA's own while using the same process, then there is [a] potential cause of action for breach of contract based on fraud.

Trial Court Opinion, 1/6/16, at 5 n.2. Inexplicably, the court continued:

> However, that does not appear to be the case here. There is no description, in the [SOU] . . . as to the exact process that is to be used to value the clients. However, there is discussion of the method of valuation within the Independent Valuation[.]

*Id*. It is not clear from this footnote what conclusion the trial court invited the reader to draw from this line of reasoning. However, on our reading, this observation clearly indicates that preliminary objections in the nature of a demurrer were improperly sustained in this case.

It is beyond doubt that Appellant has averred a disparity between the valuation promised by the SOU, and that delivered by Appellees. It is

irrelevant at this early stage of litigation that this evidence was obtained by a process potentially outside the four-corners of the contract, since the SOU does not specifically set forth the mechanism for valuing each client. Indeed, at this stage, we cannot fathom the means by which a party could assail Appellees' valuation without the aid of an independent source. As such, material questions of fact remain that preclude us from concluding that, at this juncture, it is clear and free from doubt that Appellant will be unable to prove facts legally sufficient to establish that Appellees breached the SOU. Thus, we find that, based on the disparity between the values arrived at by the parties herein, when considered in light of the questions of material fact that cannot be determined on the record before us, the trial court erred in sustaining Appellees' preliminary objections as to Appellant's breach of contract claim.

Simply, when viewing the allegations contained in the amended complaint as true, Appellant has alleged the existence of a contract, the SOU, a breach of that contract, *i.e.*, the allocation of clients which do not satisfy a 48.5% of Appellant's ownership interest, and damages induced thereby, valued at the difference between the portfolio transferred to Appellant's new business and the outstanding value purportedly owed. Hence, we reverse the trial court's ruling, and remand for further proceedings consistent with this disposition.

Appellant's second claimed error challenges the receiver's failure to independently assess the value of KFA's business before authoring its memorandum outlining the procedure to finalize the dissolution of KFA. Based on our disposition above, Appellant will have the opportunity to gather and introduce evidence of that value in future proceedings. Since Appellant presented his second issue as an alternate mechanism by which to determine the value of the business transferred to his new company, we need not reach it here.

Order sustaining preliminary objections in the nature of a demurrer reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2018